11-301-cr
*United States v. Robinson*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: January 25, 2012                                    Decided: November 30, 2012)

Docket No. 11-301-cr

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

     *Appellee*,

     v.

DEVON ROBINSON, AKA DA DA,

     *Defendant-Appellant*.[1]

───────────────────────────────────────────────

Before: KEARSE, CABRANES, and STRAUB, *Circuit Judges*.

Defendant-appellant Devon Robinson appeals from the January 26, 2011 judgment of the

United States District Court for the Eastern District of New York (John Gleeson, *Judge*), convicting

him, following a jury trial, on two counts of sex trafficking of a minor in violation of 18 U.S.C. § 1591.

On an issue of first impression, we consider the appropriate construction of 18 U.S.C. § 1591(c), an

evidentiary provision added by the William Wilberforce Trafficking Victims Protection Reauthorization

Act of 2008 ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008), which provides that "[i]n a

prosecution . . . in which the defendant had a reasonable opportunity to observe the [victim], the

Government need not prove that the defendant knew that the person had not attained the age of 18

years." 18 U.S.C. § 1591(c) (Supp. II 2008). We hold that this provision, when applicable, imposes

strict liability with regard to the defendant's awareness of the victim's age, thus relieving the

───────────────

[1] The Clerk of Court is directed to amend the caption of this case to conform to the listing of the parties shown above.

government's usual burden to prove knowledge or reckless disregard of the victim's underage status under § 1591(a). We reject Robinson's remaining evidentiary and sentencing challenges as lacking merit, and therefore affirm the judgment of the District Court.

Judge Kearse concurs in the judgment in a separate opinion.

> CURTIS J. FARBER, Law Office of Curtis J. Farber, New York, NY, *for Defendant-Appellant.*
>
> SYLVIA S. SHWEDER, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney, United States Attorney's Office for the Eastern District of New York, *for Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant Devon Robinson appeals from the January 26, 2011 judgment of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*), convicting him, following a jury trial, on two counts of sex trafficking of a minor in violation of 18 U.S.C. § 1591. On an issue of first impression, we consider the appropriate construction of 18 U.S.C. § 1591(c), an evidentiary provision added by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008), which provides that "[i]n a prosecution . . . in which the defendant had a reasonable opportunity to observe the [victim], the Government need not prove that the defendant knew that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c) (Supp. II 2008). We hold that this provision, when applicable, imposes strict liability with regard to the defendant's awareness of the victim's age, thus relieving the government's usual burden to prove knowledge or reckless disregard of the victim's underage status under § 1591(a). We reject Robinson's remaining evidentiary and sentencing challenges as lacking merit, and therefore affirm the judgment of the District Court.

# BACKGROUND

On April 14, 2010, a federal grand jury returned a superseding indictment charging Devon Robinson with three counts of child sex trafficking in violation of 18 U.S.C. § 1591. Two counts proceeded to trial, both relating to a single minor victim, Jane Doe, who was born on April 5, 1991. These two counts corresponded to the two versions of § 1591 in effect when Robinson is alleged to have trafficked Jane Doe. Count One, as renumbered at trial,[2] charged sex trafficking of a minor under the amended version of § 1591 and covered the period from December 23, 2008, when the amendments took effect, through April 5, 2009, when Jane Doe turned eighteen.[3] Count Two charged sex trafficking of a minor under the preceding version of § 1591(a) and covered the period from January 1, 2007 through December 22, 2008.[4]

---

[2] The superseding indictment also included a third count charging sex trafficking of a child with respect to a second minor victim; the government moved to dismiss that count prior to trial. For trial, the counts involving Jane Doe were renumbered as "Count One" and "Count Two," and we refer to them as such here.

[3] The current version of § 1591, effective as of December 23, 2008, provides

    (a)  Whoever knowingly—

        (1)  in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

        (2)  benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

        *knowing, or in reckless disregard of the fact*, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or *that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act*, shall be punished as provided in subsection (b).

        . . . .

    (c)  *In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person* so recruited, enticed, harbored, transported, provided, obtained or maintained, *the Government need not prove that the defendant knew that the person had not attained the age of 18 years.*

18 U.S.C. § 1591 (effective Dec. 23, 2008) (emphases supplied).

[4] The preceding version of § 1591(a), which was in effect from December 19, 2003 to December 22, 2008, provided:

(a)  Whoever knowingly—

## A. The Trial

A jury trial commenced before Judge Gleeson in the Eastern District of New York on June 21, 2010. During trial, the government called Jane Doe—who at that time was nineteen years old—to testify. After she invoked the Fifth Amendment protection against self-incrimination and was granted immunity, the government received permission to treat her as a hostile witness. She testified that she had run away from home on several occasions in her early teenage years, and had dropped out of high school at the age of seventeen. While in high school, Jane Doe began to work as an exotic dancer at a strip club and as a prostitute. She was arrested several times for and convicted of prostitution in Queens, New York, in 2008 and 2009. Jane Doe testified that she met Robinson through his sister two and a half years prior to the trial and started dating him when she was seventeen. She also testified that she told "everybody" that she was nineteen at the time. Throughout the trial, Jane Doe insisted that Robinson was her boyfriend rather than her pimp, and that he was only living off of her income as a prostitute rather than facilitating that line of work.

The balance of the evidence against Robinson consisted primarily of recorded statements. On July 18, 2008, Robinson made a videotaped statement to a detective and an assistant district attorney ("ADA") in the Queens County District Attorney's Office, in which he admitted that he had been staying with his "girlfriend" Jane Doe at the Courtesy Hotel in Hempstead, New York, for about three

---

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

*knowing* that force, fraud, or coercion described in subsection (c)(2) will be used to cause the person to engage in a commercial sex act, or *that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act*, shall be punished as provided in subsection (b).

18 U.S.C. § 1591 (Supp. III 2003) (emphases supplied), *amended by* Pub. L. No. 110-457, 122 Stat. 5044 (2008).

months and that Jane Doe paid for their room.  The videotaped statement included the following

exchange:

> ADA:          You gotta, the obvious thing[ ] [is] you got to be real with us[.]
> DR:           But I ain't gonna say I'm a pimp though.  But you know.
> ADA:          You watch out for them and they give you money[.]
> DR:           They take care of me.  Word[.]
> ADA:          I think that's by definition a pimp[.]
> DR:           (laughter)

>                           ∗          ∗          ∗

> DR:           [Robinson admitted to having promoted prostitution on an occasion in
>               the past.][5]  So I stopped it.  So I tried to do something else.  You feel
>               what I'm saying?
> ADA:          That's when you moved on to the prostitution.
> DR:           Exactly.  Tried to do something else.  And awright [*sic*], it worked for a
>               little while.

Gov't App'x 11.  The prosecution also introduced thirty-five recorded telephone calls that Robinson

made from various detention facilities between July 20, 2008, and April 10, 2010.  As demonstrated in

the following excerpts, Robinson repeatedly implored Jane Doe to make money for him:

> *September 2, 2008*: "You're gonna make that bread tonight, right baby? . . . . So you're
> gonna make daddy happy when I call you in the morning?"  *Id.* at 29.

> *September 7, 2008*: "Listen, every night, you give [Robinson's grandmother] 200 f***ing
> dollars man . . . .  [J]ust make 200 tomorrow, give all that sh** to my grandma man. . . .
> [T]onight, yo, you better on some real sh** man, like these next 7 days man.  2, 4, 6, 8,
> 10, 12, 14.  Yo man, that's 1400.  200 dollars every mother f***ing day to my
> grandmother for the next 7 days man."  *Id.* at 48, 50, 54.

> *September 9, 2008*: "Can you please make me happy baby?  That's all, man.  That's all I
> want you to do man is just to get that money out for me baby. . . .  How hard is it,
> right? Every date that you go on, right, when you finish with the date, how hard is it to
> get the date to drop you off on 115?"  *Id.* at 58, 62.

---

[5] The parties stipulated to this substitution in language on the videotape.

In other conversations, Robinson threatened Jane Doe when she failed to deliver the money:

*September 16, 2008*: "Word to my mother . . . if my grandmas have to bail me out, when I come home I'm not f***in with you no more and I'm gonna beat the sh** out of you . . . . I'm gonna beat the sh** out of you stupid slut a** man." *Id.* at 101.
*September 26, 2008:* "I'm ready to send a bit** over there to wash you the f*** up . . . . I said I'm ready to send, I'm ready to send somebody over there to f*** you up man. . . . All right, listen I'm gonna get the last laugh man. Always remember that, when I come home I'm gonna have the last laugh. Cause I'm gonna beat the sh** out of your stupid a**. Word to mother I'ma throw you in a f***ing garbage can and let everybody know you ain't sh**. . . . [S]tupid bit**, f*** you talking about[?] Yo, just make sure man you get that money tonight man. And you take that to my grandmother man on some real sh** man." *Id.* at 110, 113.

*October 4, 2008*:

| | |
|---|---|
| Jane Doe: | "If I was to ever leave you, what would you do?" |
| Robinson: | "Kill your a**." |
| Jane Doe: | "Didn't you use to say till death do us part? . . . . What does that mean? You're gonna kill me before I leave right?" |
| Robinson: | "Yeap, kill you." *Id.* at 132. |

During other phone calls, Robinson discussed women named "Angie" and "Creame." For instance, in an October 11, 2008 call, Robinson told his cousin, Tykim, that when he got out of jail, "Creame is back in my possession." Robinson also said that he spoke to Creame and that she was "ready to come back to her n***er" and that Robinson told her "just stay where you're at though right now man I'll be home soon man. You're coming back to a pimp." *Id.* at 140.

**B. The Verdict and Sentence**

On June 24, 2010, the jury returned a guilty verdict on both counts of sex trafficking of a minor in violation of § 1591. The jury also found by special verdict that Robinson (1) knew that Jane Doe was under the age of eighteen, (2) recklessly disregarded that fact, and (3) that he had a reasonable opportunity to observe Jane Doe.

On January 21, 2011, Robinson was sentenced principally to 180 months of imprisonment on each count, to run concurrently, followed by five years of supervised release. Judgment was entered on January 26, 2011. This appeal followed.

**DISCUSSION**

Section 1591 was first enacted as part of the Trafficking Victims Protection Act of 2000 ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (Oct. 28, 2000),[6] the stated purpose of which was "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a). The TVPA defined as "severe forms of trafficking in persons" the two forms of sex trafficking proscribed by § 1591—sex trafficking involving a commercial sex act "induced by force, fraud, or coercion," or in which the person induced to perform the sex act was under the age of eighteen. *Id.* § 7102(8)(A) (2000). Under the TVPA, a conviction for child sex trafficking under § 1591 required proof, *inter alia*, that the defendant acted "*knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . .*" 18 U.S.C. § 1591(a) (2000) (emphasis supplied).

Section 1591 was amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008),[7] which took effect on December 23, 2008.[8] Under the amended version of § 1591, a defendant could be convicted of child sex trafficking upon a showing, *inter alia*, that he acted "*knowing, or in reckless disregard of the fact*

---

[6] The TVPA was part of a larger Act known as the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (Oct. 28, 2000).

[7] William Wilberforce was an English politician and social reformer whose campaign to abolish the slave trade led to Parliament's passage of the Slave Trade Act of 1807, and eventually to the Slavery Abolition Act of 1833, which officially ended the institution of slavery in most of the British Empire. *See generally* ERIC METAXAS, AMAZING GRACE: WILLIAM WILBERFORCE AND THE HEROIC CAMPAIGN TO END SLAVERY (2007).

[8] Section 1591 was amended in 2003 and 2006 as well, but the substance of those amendments is not pertinent to the issues raised by this appeal. Thus, for ease of expression, we refer to the 2008 version of § 1591 as the "amended version."

. . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a) (Supp. II 2008) (emphasis supplied). The TVPRA also added a new subsection (c), which provides as follows:

> In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years.

*Id.* § 1591(c) (Supp. II 2008). The proper construction of the new § 1591(c) is an issue of first impression in our Circuit.

As noted above, Count One charged Robinson with sex trafficking of a minor, in violation of the amended version of § 1591, while Count Two charged him with sex trafficking of a minor, in violation of the previous version of § 1591. On appeal, Robinson primarily contests his knowledge or reckless disregard of Jane Doe's status as a minor. Specifically, Robinson argues that his conviction should be reversed because (1) the District Court erred by instructing the jury that he could be convicted upon a showing that he had a "reasonable opportunity" to observe Jane Doe, and (2) evidence was insufficient to prove that he knew or recklessly disregarded that Jane Doe was a minor. Robinson also argues (3) that the District Court erred by admitting certain recorded telephone calls, and (4) that his sentence of 180 months was procedurally unreasonable. We address these arguments in turn.

**A. The Jury Instructions on Count One**

Robinson challenges the jury instructions on Count One, which charged him with sex trafficking of a minor, in violation of the amended version of § 1591. Robinson's argument focuses on the statute's *mens rea* requirement with regard to his awareness that Jane Doe was a minor. The District Court charged the jury, in relevant part, that "[t]o prove Count One, the government must prove beyond a reasonable doubt . . . that [the defendant] knew that Jane Doe had not attained the age of

eighteen years, or he recklessly disregarded that fact, or he had a reasonable opportunity to observe Jane Doe." Joint App'x 215. In other words, the District Court identified three independent ways of proving criminal liability with respect to Robinson's awareness of Jane Doe's status as a minor: (1) he knew that she was under eighteen, (2) he recklessly disregarded the fact that she was under eighteen, *or* (3) he had a reasonable opportunity to observe her.

On appeal, where our review of jury instructions for legal error is *de novo*, *United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011), the parties present two widely divergent interpretations of the statute. Robinson argues that § 1591(c) is a conjunctive requirement, meaning the government must prove *both* that he had a reasonable opportunity to observe Jane Doe *and* that he recklessly disregarded her age. In support of this view, he cites the only federal decision addressing this question. *See United States v. Wilson*, No. 10-60102-CR, 2010 WL 2991561 (S.D. Fla. July 27, 2010), *report and recommendation adopted by* 2010 WL 3239211 (S.D. Fla. Aug. 16, 2010). In *Wilson*, the district court adopted the magistrate judge's report and recommendation, which stated that "where the Government elects to proceed under the reckless disregard level of *mens rea*, Section 1591(c) requires the Government to prove beyond a reasonable doubt not only that the defendant acted in reckless disregard [of the victim's status as a minor], but also that the defendant had a reasonable opportunity to observe the person recruited." *Id.* at *7.

By contrast, the government defends the District Court's instructions, arguing that the word "knew" in § 1591(c) refers to knowledge *and* reckless disregard, thus creating a freestanding alternative to proving either of the *mens rea* alternatives in § 1591(a). *See* Gov't Br. 43 ("The district court correctly read § 1591(c) to mean that the government need not prove *the knowledge element*—whether under a knowing or reckless disregard standard—in cases where the defendant had a reasonable opportunity to observe the victim." (emphasis in original)).

9

Robinson responds to the government's interpretation by pointing out that the amended version of § 1591(a) requires the government to prove "know[ledge]" or "reckless disregard," whereas § 1591(c) mentions only that in certain circumstances the government need not prove that the defendant "knew" that the victim was a minor. *Compare* 18 U.S.C. § 1591(a) (Supp. II 2008) (defendant must have acted "knowing, or in reckless disregard of the fact, that . . . the person has not attained the age of 18 years"), *with id.* § 1591(c) (Supp. II 2008) (in certain circumstances, "the Government need not prove that the defendant knew that the person had not attained the age of 18 years"). Based on this discrepancy, Robinson frames the government's argument as an unwarranted effort "to insert language into a statute in the interest of achieving symmetry." Appellant's Br. 43; *see also Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks omitted)).

We must begin, of course, with the plain language of the statute, and "our inquiry must cease if the statutory language is unambiguous . . . and the statutory scheme is coherent and consistent." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1893 (2011) (alterations and internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "In interpreting the statute at issue, we consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (alteration and internal quotation marks omitted). Or, as Justice Scalia observed in another context, "the words of a statute are *not* to be read in isolation; statutory interpretation is a 'holistic endeavor.'"

*Regions Hosp. v. Shalala*, 522 U.S. 448, 466 (1998) (Scalia, J., dissenting) (quoting *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)).

Robinson's interpretation is mistaken. The text and structure of the statute do not indicate that § 1591(c) imposes an *additional* element on top of the *mens rea* requirement in § 1591(a). Quite to the contrary, § 1591(c) states what the government "need *not* prove." 18 U.S.C. § 1591(c) (Supp. II 2008) (emphasis supplied).

The better reading of § 1591(c) is that the government may prove that the defendant had a reasonable opportunity to view the victim *in lieu of* proving knowledge. In relevant part, § 1591(c) reads: where "the defendant had a reasonable opportunity to observe the [victim], the Government need not prove that the defendant knew that the person had not attained the age of 18 years." *Id.* Viewed in context, the most natural reading of this provision is that proof that the defendant had a reasonable opportunity to observe the victim may substitute for proof that the defendant knew the victim's underage status. Because § 1591(a) requires proof of knowledge *or* reckless disregard—not both—the government may satisfy its burden by proving knowledge *or the substitute for knowledge under § 1591(c)*. Accordingly, § 1591(c) supplies an *alternative* to proving any *mens rea* with regard to the defendant's awareness of the victim's age. This reading gives force to the provision's obvious goal—to reduce the government's burden where the defendant had a reasonable opportunity to observe the victim.

This commonsensical understanding of § 1591(c) also vindicates "the cardinal rule that, if possible, effect shall be given to every clause and part of a statute." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (quotation marks omitted); *see also Duncan*, 533 U.S. at 174 ("It is our duty to give effect, if possible, to every clause and word of a statute." (quotation marks omitted)). If Robinson were correct that § 1591(c)'s use of the word "knew" did not remove the usual

11

*mens rea* requirement, then § 1591(c) would add *nothing* to the statute. That is because by including

reckless disregard as one of the *mens rea* options, § 1591(a) already provides that a defendant may be

proved guilty without having known that the victim was a minor. In sum, the plain reading of

§ 1591(c), and the only interpretation that preserves any meaning, is that the provision creates strict

liability where the defendant had a reasonable opportunity to observe the victim. Accordingly, just as

the District Court instructed, § 1591(a) and § 1591(c) provide the government with three distinct

options—prove beyond a reasonable doubt that: (1) the defendant had knowledge of the victim's

underage status; (2) that the defendant recklessly disregarded that fact; or (3) that the defendant had a

reasonable opportunity to observe the victim.

We are mindful that criminal statutes are generally construed to include *mens rea* requirements.

*See Staples v. United States*, 511 U.S. 600, 605–06 (1994); *United States v. U.S. Gypsum Co.*, 438 U.S. 422,

437–38 (1978). But that presumption does not apply to sex crimes against minors, *see Morissette v. United

States*, 342 U.S. 246, 251 n.8 (1952), at least when "the perpetrator confronts the underage victim

personally," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n.2 (1994).[9] Moreover, the

presumption applies when someone engages in "otherwise innocent conduct," including

constitutionally protected conduct, *id.* at 72, and thus has little purchase for Robinson, who was

engaged in sex trafficking. *See United States v. Griffith*, 284 F.3d 338, 351 (2d Cir. 2002) ("[A] defendant

is already on notice that he is committing a crime when he transports an individual of any age in

interstate commerce for the purpose of prostitution."); *see also X-Citement Video*, 513 U.S. at 73 n.3

("Criminal intent serves to separate those who understand the wrongful nature of their act from those

---

[9] Indeed, personally confronting an underage victim may suffice to show reckless disregard of the victim's age. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 & n.18 (2007) (criminal reckless disregard of a fact means awareness of "'an unjustifiably high risk'" of that fact (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994))); *cf. X-Citement Video*, 513 U.S. at 76 n.5 ("[T]he reality [is] that producers [of child pornography] are more conveniently able to ascertain the age of performers. It thus makes sense to impose the risk of error on producers."); *United States v. Brooks*, 610 F.3d 1186, 1197 (9th Cir. 2010) (jury's "opportunity to consider [the victim's] appearance during her testimony, at which time she was eighteen," was among the evidence sufficient to show defendant's knowledge that the victim was a minor).

12

who do not, but does not require knowledge of the precise consequences that may flow from that act once aware that the act is wrongful."); *cf., e.g., United States v. Feola*, 420 U.S. 671, 684 (1975) (holding that "to effectuate the congressional purpose of according maximum protection to federal officers," a federal criminal statute punishing assaults against federal officers "cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer").

Our interpretation of § 1591(c) also maintains uniformity with the other federal child-protective statutes that use nearly identical language and that have been interpreted to "lack [ ] *mens rea* requirements with respect to [the victim's] age." *United States v. Jennings*, 496 F.3d 344, 353 (4th Cir. 2007). For example, in 18 U.S.C. § 2241 and § 2243—two provisions that punish sexual abuse of children—Congress drafted subsections labeled "[s]tate of mind proof requirement," which explain that "the Government need not prove that the defendant knew" the victim was a minor. 18 U.S.C. § 2241(d), § 2243(d).[10] Courts have uniformly interpreted these provisions as disclaiming *mens rea* requirements with respect to the victim's age. *See, e.g., United States v. White Calf*, 634 F.3d 453, 457 (8th Cir. 2011) (addressing § 2243(d)); *United States v. Ransom*, 942 F.2d 775, 776 n.1 (10th Cir. 1991) (addressing § 2241(d)); *see also Jennings*, 496 F.3d at 352–53 (addressing both sections and applying the same principle to § 2244); *United States v. Juvenile Male*, 211 F.3d 1169, 1171 (9th Cir. 2000) (addressing

---

[10] Section 2241(d) provides: "State of mind proof requirement—In a prosecution under subsection (c) of this section, the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years."

Section 2243(d) provides: "State of mind proof requirement.—In a prosecution under subsection (a) of this section, the Government need not prove that the defendant knew—(1) the age of the other person engaging in the sexual act; or (2) that the requisite age difference existed between the persons so engaging." This statute also provides for an affirmative defense if "the defendant reasonably believed that the other person had attained the age of 16 years." 18 U.S.C. § 2243(c)(1).

§ 2241(c)). Moreover, one of these provisions—§ 2241(d)—evidently was the template for § 1591(c).[11] Having used identical language, Congress obviously intended the same principle to apply with respect to § 1591(c), thus making the defendant's awareness of the victim's age irrelevant when the defendant had a reasonable opportunity to observe the victim.

Finally, we note that § 1591(c)'s drafting history further supports our textual analysis. The legislative reform that culminated in the adoption of § 1591(c) in the 2008 amendments began in the House of Representatives with a bill that would have left knowledge as the only mental state referenced in § 1591(a) but would have added the following provision: "In a prosecution under this subsection, the Government need not prove that the defendant knew that the person had not attained the age of 18 years." H.R. 3887, 110th Cong. § 221 (as passed by H.R., Dec. 4, 2007). The House bill thus proposed made the trafficking of minors into a strict-liability crime with respect to a defendant's awareness of the victim's age, even if the defendant never observed the victim. The members of the Senate Judiciary Committee apparently disfavored this strict-liability option and instead reported a bill adding "or in reckless disregard" to the *mens rea* requirement in § 1591(a). S. 3061, 110th Cong. § 222 (as reported by S. Comm. on the Judiciary, Sept. 8, 2008). The House then responded by passing another bill, this time keeping the proposed *mens rea* language from the reported Senate bill but adding the provision that now appears in § 1591(c)—providing that when "the defendant had a reasonable opportunity to observe" the victim, "the Government need not prove that the defendant knew that the person had not attained the age of 18 years." H.R. 7311, 110th Cong. § 222 (as passed by H.R. Dec. 10, 2008). This drafting history helps clarify what is already apparent when reading § 1591 in its entirety: The government need

---

[11] Two cosponsors of the House version of the TVPRA, Judiciary Committee Chairman John Conyers and Representative Howard Berman, also explained that § 1591(c) "reflects a similar provision in the aggravated sexual abuse offense, [18 U.S.C. §] 2241(d), and is crafted in light of *United States v. X-Citement Video*, 513 U.S. 64, 70, n.2 (1994) (exception from presumption of mens rea more appropriate in statutes in which perpetrator necessarily 'confronts the underage victim personally and may reasonably be required to ascertain that victim's age')." 154 Cong. Rec. H24602 (daily ed. Dec. 10, 2008).

14

not prove any *mens rea* with regard to the defendant's awareness of the victim's age if the defendant had a reasonable opportunity to observe the victim.

Given this holding, we conclude that the District Court did not err in giving the three-part jury instruction. In a prosecution under § 1591, the government may satisfy its burden of proof with respect to the defendant's awareness of the victim's age by proving any of the following beyond a reasonable doubt: (1) the defendant knew that the victim was under eighteen, (2) the defendant recklessly disregarded the fact that the victim was under eighteen, *or* (3) the defendant had a reasonable opportunity to observe the victim.[12]

## B. The Sufficiency Challenge

Robinson raises sufficiency challenges on Counts One and Two, arguing that the government failed to present sufficient evidence that he either knew or recklessly disregarded Jane Doe's minor status. When reviewing a sufficiency challenge, we will uphold the judgments of conviction if "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As we have often stated, this standard is "exceedingly deferential," to the jury's role as factfinder. *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008). "In considering such a challenge, we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility, and its assessment of the weight of the

---

[12] Finally, even if the District Court had erred, that error would not require a new trial because it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Kozeny*, 667 F.3d at 130 (quotation marks omitted). The jury completed a special verdict form with respect to Count One, indicating that Robinson (1) knew that Jane Doe was under the age of eighteen, (2) recklessly disregarded that fact, *and* (3) had a reasonable opportunity to observe her during the time period relevant to that count. (The jury returned a general guilty verdict on Count Two, thereby finding that Robinson knew that Jane Doe was under the age of 18 during the relevant time period.) As we explain below, the evidence is sufficient for a reasonable jury to find that Robinson knew or recklessly disregarded that Jane Doe was a minor during the Count One time period.

15

evidence." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (internal citations, alterations, and internal quotation marks omitted).

Robinson primarily argues that the evidence was insufficient to prove his knowledge or reckless disregard of Jane Doe's status as a minor because Jane Doe testified repeatedly that she told Robinson, his family, and "everybody" she was nineteen. When she was arrested for prostitution, Jane Doe also told the police she was nineteen; the police were able to determine her true age only by producing her arrest record (or "rap sheet"). Robinson also cites the testimony of Donald Smith, who worked at a hotel frequented by Robinson and Jane Doe, and who testified that an African American female staying with Robinson appeared to be "maybe 21, 22" years old.[13]

The government responds by pointing out that Robinson's "reasonable opportunity to observe" Jane Doe was "a highly relevant circumstance from which an inference of knowledge or reckless disregard can be drawn." Gov't Br. 37. For example, in a call recorded on January 5, 2010 (when Jane Doe was eighteen years old), Jane Doe stated that she and Robinson had "been together" every weekend "for like three years." In another conversation, Robinson and Jane Doe discussed her birthday. The government argues that even if people who interacted with Jane Doe on a short-term or casual basis could be deceived about her age, "it would strain credulity to suggest that someone who had known her as long and as intimately as Robinson would not have learned her true age." Gov't Br. 39. Finally, the jury had an opportunity to observe Jane Doe testify at trial, when she was nineteen years old, and also to view several photographs of Jane Doe taken before she turned eighteen. The government concludes that it was well within the province of the jury to find that Jane Doe's appearance and demeanor were such that her status as a minority would have been obvious to someone intimately involved in her life.

16

Viewing the evidence in the light most favorable to the government, *see Evans v. United States*, 504 U.S. 255, 257 (1992), we conclude that the record supports the jury's finding of guilt on Counts One and Two. With regard to Count One, it is uncontested that Robinson had a "reasonable opportunity to observe" Jane Doe when he was causing her to engage in commercial sex acts as a minor, and, as explained above, that showing satisfies the government's burden under the amended statute. *See* 18 U.S.C. § 1591(c) (Supp. II 2008). Therefore, we reject Robinson's sufficiency argument with respect to Count One. And, even if we disregarded § 1591(c), the jury still had sufficient evidence under the amended version of § 1591(a) to render its special verdict with respect to Robinson's reckless disregard of Jane Doe's status as a minor. A reasonable jury could conclude that Robinson's ability to personally observe his underage victim, especially given their intimate relationship, put him on notice of an unjustifiably high risk that she was underage. *See* note 8, *ante*.

For the same reasons, a reasonable jury also could conclude, both with respect to the Count One time period and the Count Two time period, that Robinson knew that Jane Doe was under the age of eighteen at the time he was causing her to engage in commercial sex acts within those respective time spans. The government's case rested on circumstantial evidence, but "the *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom." *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005). In fact, "[a] verdict of guilty may be based entirely on circumstantial evidence as long as the inferences of culpability drawn from the circumstances are reasonable." *Id.* at 190. Moreover, our role in reviewing sufficiency arguments is "exceedingly deferential," *Hassan*, 578 F.3d at 126, because "it is the task of the jury, not the court, to choose among competing inferences," *MacPherson*, 424 F.3d at 190 (quotation marks omitted).

---

[13] It is not clear whether this person was Jane Doe or another prostitute staying with Robinson.

A reasonable jury could determine, based on the evidence of the relationship between Robinson and Jane Doe, that during both relevant time periods Robinson was aware of Jane Doe's status as a minor, especially given that their relationship began before Jane Doe dropped out of high school during her junior year. The jury also had an opportunity to witness Jane Doe's appearance at trial in June 2010 when she was nineteen, and based on that appearance jurors could have inferred that Robinson knew that Jane Doe was a minor both before and after the statutory amendment in December 2008. *See, e.g.*, *United States v. Brooks*, 610 F.3d 1186, 1197 (9th Cir. 2010) (jury's "opportunity to consider [the victim's] appearance during her testimony, at which time she was eighteen," was among the evidence sufficient to show defendant's knowledge that the victim was a minor). While this evidence by no means *required* the jury to infer Robinson's knowledge of Jane Doe's underage status, looking at the evidence as a whole and drawing all reasonable inferences in the government's favor, we cannot say that *no* rational trier of fact could have found beyond a reasonable doubt that Robinson knew that Jane Doe was a minor.

## C. The Evidentiary Rulings

Robinson also challenges the admission of recorded telephone calls that included evidence of his relationship with other prostitutes and evidence that he threatened and used force against Jane Doe. We review a district court's evidentiary rulings with deference, "mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010). "We will reverse an evidentiary ruling only for 'abuse of discretion.'" *Id.*; *see also In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term of art "abuse of discretion" includes errors of law).

18

**1. Evidence Regarding Robinson's Relationship with Other Prostitutes**

First, Robinson argues that the District Court erred by admitting several recorded telephone calls in which Robinson discussed his former, current, or prospective control of other prostitutes, including Angie and Creame. Robinson asserts that this evidence served to demonstrate only his propensity to engage in prostitution-related activity, and was therefore inadmissible under Rule 404(b) of the Federal Rules of Evidence.[14]

In this case, the District Court held that the conversations that made reference to other prostitutes did not constitute "other act" evidence within the meaning of Rule 404(b), and therefore admitted the conversations as proof of the nature of the relationship between Robinson and Jane Doe. In particular, the District Court noted that "a critical factual dispute" in the case was whether the relationship between Robinson and Jane Doe could be "characterized as the relationship between a pimp and a prostitute." Joint App'x 97. The District Court concluded that the conversations in which Robinson discussed other prostitutes "shed important light [on] whether or not Jane Doe was a prostitute working with or for the defendant." *Id.*

We find no error in that decision. Evidence of uncharged criminal conduct is not evidence of "other crimes, wrongs, or acts" under Rule 404(b) if that conduct "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v.*

---

[14] Rule 404(b) provides, in relevant part:

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

*Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quotation marks omitted); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007). Robinson argued at trial that Jane Doe was his "girlfriend" and that he had no control over her prostitution activities. Evidence that Robinson was in the prostitution business and controlled prostitutes other than Jane Doe was therefore "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (quotation marks omitted); *see also United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) (holding that defendant's prior uncharged acts of abuse demonstrated "a pattern of activity that continued up to the time of the charged conduct," and were therefore probative of the defendant's intent).

Robinson also argues that, because he had stipulated that he had "promoted prostitution on an occasion in the past," the District Court erred by failing to exclude the conversations about other prostitutes as needlessly cumulative and unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.[15] But contrary to Robinson's assertions, the recordings were not cumulative of Robinson's stipulation. The stipulation did not "complete the story," *Carboni*, 204 F.3d at 44, because it did not demonstrate the context of Robinson's conversations with Jane Doe, including Jane Doe's awareness that Robinson prostituted other women and her struggles to maintain a preferred status among those women. Nor was the evidence regarding the other prostitutes unfairly prejudicial. Indeed, that evidence was no more inflammatory than the child sex trafficking charges involving Jane Doe. *See, e.g.*, *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (holding that prior act evidence was not unduly prejudicial because, in part, it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").

---

[15] Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: *unfair* prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403 (emphasis supplied).

We conclude that the District Court did not abuse its discretion by admitting the recorded telephone calls involving other prostitutes as direct proof of the charged crimes. *See Quinones*, 511 F.3d at 309.

### 2. Evidence That Robinson Threatened and Used Force Against Jane Doe

Robinson further contends that the District Court erred by admitting recorded telephone calls in which he threatened, among other things, to beat Jane Doe and to kill her if she were to leave him. Robinson argues that this evidence was irrelevant because Robinson was charged with sex trafficking of a minor—not with sex trafficking by force, fraud, or coercion. We disagree. Evidence of threats was relevant here because it addressed the nature of the relationship between Robinson and Jane Doe. A reasonable juror, for example, could conclude that Robinson sounded a lot more like Jane Doe's pimp than her "boyfriend," "lover," or "best friend," when he threatened that, if she did not have the "f***ing money," he would "beat the sh** out of [her] stupid a** . . . [and] throw [her] in a f***ing garbage can and let everybody know [she] ain't sh**."

Robinson's fallback argument, that the threat evidence caused him unfair prejudice, is equally unavailing. The sole case Robinson cites in support of his prejudice argument, *United States v. Colombo*, 869 F.2d 149 (2d Cir. 1989), is readily distinguishable. In that case, we reversed a conspiracy conviction where the district court admitted "background" evidence that the defendant's co-conspirators had raped and sodomized a woman in the course of a robbery—despite the fact that the defendant was not present during the sexual assault and did not know that it would occur. *Id.* at 153. Here, by contrast, Robinson's threats were not simply gratuitous evidence of violence offered to show the "background" of the charged offense. Instead, the evidence of these threats related to material factual disputes at trial.

On these facts, we conclude that the District Court did not abuse its discretion in admitting evidence of Robinson's threats and use of force against Jane Doe.

21

## D. The Sentencing Challenge

Finally, Robinson contends that his sentence of 180 months of imprisonment was procedurally unreasonable. We review a criminal sentence for reasonableness, which "amounts to review for abuse of discretion." *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc). "Reasonableness review requires an examination of the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). A district court commits procedural error where it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Robinson's entire sentencing claim rests on a single word in the District Court's remarks at the sentencing proceeding, as highlighted in the following passage:

> The driving factors of this sentence have to be, in my judgment . . . this very chilling, really, ownership of [Jane Doe] by the defendant and the threats . . . that he wasn't kidding around when he said he was going to come home and beat her up, the evidence in the conversations themselves that he had done that in the past and she still came back, and the use of that control to force them on her, and I mean force.
>
> I listened to her testimony. I mean, she was an impressive young woman, I thought, but she was a minor in the situation she was in and, make no mistake about it, no matter what she says, she was coerced as a minor to prostitute herself by this defendant.
>
> That bundle of activity—the ownership of a person, the threatening, the physical abuse, forcing them to *become* a prostitute—is so much more worthy of . . . condemnation expressed in the form of jail time than most of the federal crimes we see.

Joint App'x 261–62 (emphasis supplied). Robinson contends that the highlighted word demonstrates a "significant procedural error," *Gall*, 552 U.S. at 51, because there was no evidence that he forced Jane Doe "to become a prostitute" in the first instance. We disagree. The clear import of the District

22

Court's remarks, taken as a whole, was not that Robinson had corrupted an otherwise innocent victim, but that he had taken control of Jane Doe and forced her to engage in prostitution. For example, the tapes contain numerous conversations in which Robinson coerced Jane Doe to prostitute herself when she was reluctant or unwilling to do so. We find no error, procedural or otherwise, in the District Court's commentary on the nature of the relationship between Robinson and his victim, or in the Court's sentencing decision.

## CONCLUSION

For the reasons stated above, we hold that:

(1)     When applicable, § 1591(c)—which provides that "[i]n a prosecution . . . in which the defendant had a reasonable opportunity to observe the [victim], the Government need not prove that the defendant knew that the person had not attained the age of 18 years," 18 U.S.C. § 1591(c) (Supp. II 2008)—imposes strict liability with regard to the defendant's awareness of the victim's age, thus relieving the government of its usual burden to prove knowledge or reckless disregard of the victim's underage status under § 1591(a).

(2)     Sufficient evidence supported the jury's special verdict that Robinson knew or recklessly disregarded Jane Doe's status as a minor during the Count One time period (under the 2008 version of the applicable statute) and knew Jane Doe's status as a minor during the Count Two time period (under the 2000 version of the applicable statute).

(3)     The District Court properly admitted recorded telephone calls regarding (a) Robinson's relationship with other prostitutes, and (b) Robinson's threats and prior use of force against Jane Doe.

23

(4)     The sentence imposed by the District Court was procedurally reasonable.

Accordingly, the judgment of the District Court is **AFFIRMED**.

KEARSE, <u>Circuit Judge</u>, concurring in the judgment:

I concur in the judgment affirming the conviction of defendant Devon Robinson on both counts of the indictment charging him with sex trafficking of a minor from December 23, 2008, through April 5, 2009, in violation of 18 U.S.C. § 1591 as amended effective December 23, 2008 (Count One), and sex trafficking of the minor from January 1, 2007, through December 22, 2008, in violation of § 1591 prior to its 2008 amendment (Count Two). I have no difficulty with the Majority's discussion of Count Two, its assessment of the sufficiency of the evidence, or its treatment of the evidentiary and sentencing issues. However, with respect to Count One, I am not entirely persuaded by the Majority's analysis of § 1591 as amended, and I am not persuaded that it is necessary in this case to rule that the amended section imposes strict liability on a defendant who has a reasonable opportunity to observe his underage sex-trafficking victim but who neither knows nor recklessly disregards the fact that the victim has not attained the age of 18 years.

As amended, subsection (a)(1) of § 1591 prohibits the sex trafficking of "a person . . . <u>knowing, or in reckless disregard of the fact</u>, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act," 18 U.S.C. § 1591(a)(1) (emphases added). Subsection (c) provides that "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so" trafficked, "the Government need not prove that the defendant <u>knew</u> that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c) (emphasis added).

The Majority concludes that a defendant who had "a reasonable opportunity to observe" the underage traffickee is strictly liable for causing the person to engage in a commercial

sex act even if the defendant neither knew nor recklessly disregarded the fact that the person was younger than 18. It is not clear to me that when Congress, in the amended § 1591, specified only that such an opportunity to observe means that the government need not prove that the defendant "knew," 18 U.S.C. § 1591(c), Congress meant that the government also need not prove that the defendant acted in reckless disregard.

In the present case, however, if it was error for the trial court to instruct that the jury could find Robinson guilty on Count One if he had a reasonable opportunity to observe Jane Doe, his underage traffickee, even if he neither knew nor recklessly disregarded the fact that she was younger than 18, I would affirm Robinson's conviction on the ground that that error was entirely harmless: The jury, in response to interrogatories on Count One, not only found that Robinson had such an opportunity to observe, but also found expressly "[t]hat Mr. Robinson knew Ms. Doe was under the age of 18," and "[t]hat Mr. Robinson was in reckless disregard of the fact that Ms Doe. was under the age of 18." (Verdict Sheet, June 24, 2010.) There is thus no need in this case to interpret § 1591(c) as imposing strict liability, in the absence of reckless disregard.