# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In Re Grand Jury Subpoena to
Nancy Bergeson,

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

    v.

NANCY BERGESON,
        *Defendant-Appellee,*

MICHAEL DAVID CASEY,
        *Intervenor-Appellee.*

No. 04-35312

D.C. No.
CV-03-00209-ALH

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
November 1, 2004—Portland, Oregon

Filed October 13, 2005

Before: Warren J. Ferguson, Stephen S. Trott, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Kleinfeld

14075

---

**COUNSEL**

Stephan E. Oestreicher, Jr., Criminal Division, U.S. Department of Justice, Washington, D.C., for the appellant.

Steven T. Wax, Federal Public Defender, Portland, Oregon, for the appellee.

Marc D. Blackman, Ransom Blackman, LLP, Portland, Oregon, for the intervenor-appellee.

---

**OPINION**

KLEINFELD, Circuit Judge:

This case concerns a prosecutor's subpoena of a criminal defense lawyer to testify against her client before a grand jury.

### Facts.

Assistant Federal Public Defender Nancy Bergeson finds herself in the odd position of appellee in this case. Her client, Michael Casey, an intervenor-appellee in this case, was indicted on drug charges involving the distribution of Ecstasy. The government subpoenaed Ms. Bergeson to testify against her client before a grand jury, and she successfully moved to quash the subpoena in the district court. The government appeals, and we affirm.

The dispute over the subpoena came about because Ms. Bergeson's client jumped bail.[1] The trial was originally sched-

---

[1]Failure to appear is prohibited under 18 U.S.C. § 3146:

  (a) Offense — Whoever, having been released under this chap-

uled for September 30, 2003 but was reset for October 21, 2003 on a motion to continue brought by Ms. Bergeson. Casey was not present in the courtroom for the hearing on the motion to continue the trial and failed to appear for it on the appointed day. To prove that he had knowledge of the trial date — an element of bail jumping — the government subpoenaed Ms. Bergeson in the hope that she would testify to the grand jury that she told Casey of the trial date. The district court quashed the subpoena. Though he found Ms. Bergeson's communication of the trial date was not privileged, he deemed the subpoena "unreasonable and oppressive" and quashed it under Federal Rule of Criminal Procedure 17(c)(2).[2] The judge accepted Ms. Bergeson's argument that her attorney-client relationship with Casey would be destroyed if she testified against him. The district court noted that the government had enough other evidence to procure an indictment "if that, in fact, is what it was seeking to do." The district court explained that its decision was "on a policy basis in accordance with the U.S. Attorney Guidelines"[3] and that calling

----

ter, knowingly—

(1) fails to appear before a court as required by the conditions of release; or

(2) fails to surrender for service of sentence pursuant to a court order; shall be punished as provided in subsection (b) of this section.

[2]Federal Rule of Criminal Procedure 17(c)(2) states: "Quashing or Modifying a Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."

[3]Stating that: "[a]ll reasonable attempts should be made to obtain information from alternative sources" United States Attorney Manual §§ 9-13.410(B) and

"The need for the information . . . must outweigh the potential adverse effects upon the attorney-client relationship. In particular, the need for the information must outweigh the risk that the attorney may be disqualified from representation of the client as a result of having to testify against the client." United States Attorney Manual §§ 9-13.410(C).

Ms. Bergeson as a grand jury witness seemed unnecessary under the circumstances.

Even without Ms. Bergeson's testimony, the government had evidence to show that Casey knew of the trial date: an affidavit by Ms. Bergeson in support of her motion for continuance and a statement from Casey's mother. Ms. Bergeson's affidavit swore that she personally consulted with Casey and that he agreed to the trial date of October 21.[4] The language left room, however, for an argument that she had not directly informed him that the trial was in fact set for October 21. Casey's mother's statement, on the other hand, was not at all ambiguous. A pretrial services officer in Portland had sent a memorandum to the district court a week before the scheduled trial saying that she spoke to Casey's mother on October 15th and that Casey's mother "report[ed] that the defendant told her the trial was scheduled for October 21, 2003."

The lily was gilded a little for the government by the surrounding circumstances. Casey had been released from cus-

---

[4]Paragraphs three and four of Ms. Bergeson's affidavit in support of the continuance specifically state:

"3. Discovery is ongoing in this case, as well as defense preparation and investigation. As indicated in previous pleadings, the government revealed two cooperating witnesses it intended to use in its case-in-chief in mid-June. In the meantime, Mr. Casey has investigated his case specifically on issues relating to prospects for settlement. Based on his investigation, he proposes that the Court set a date for a status report before October 21, 2003, on his intention to proceed to trial. The government has requested that a trial be set October 21, 2003.

4. I have personally consulted with Mr. Casey, and he agrees to the continuance and knows it will result in excludable delay under the provisions of 18 U.S.C. §3161(h)(8) of the Speedy Trial Act. Mr. Casey was ordered released from custody on August 6, 2003, and is currently residing with his mother in New Jersey, where he is supervised by pretrial services and is in compliance."

tody in Oregon and had been permitted to live with his mother in New Jersey while awaiting trial during which time he failed a drug test because of marijuana use. He then missed an October 9 appointment in the United States Attorney's Office in Portland, where he had been scheduled for a "proffer" interview. That stimulated the contact with Casey's mother, "who said she personally dropped the defendant off at the airport in Newark, New Jersey on October 9, 2003." Further checking showed that, despite being dropped off at the airport, Casey did not check in at the counter, lied about his flights in subsequent phone calls, and simply disappeared after his mother dropped him off. When contacted October 15, Casey's mother said "she has not heard from the defendant and is very worried about him."

After losing the motion to quash, and after the failure to appear for trial, the prosecutor discovered new evidence weakening her case for an indictment on the failure to appear charge, and thereby strengthening her case for needing Ms. Bergeson's testimony. She got a state detective in Oregon to call defendant's mother and ask if she knew her son's trial date. Although defendant's mother had told the Pretrial Officer October 15 that "the defendant told her his trial was scheduled for October 21, 2003," the detective wrote that defendant's mother told her on December 4 (after her son had jumped bail) that the trial date was the "11th or 12th maybe" and the defendant "never mentioned the trial date to her." Defendant's mother "became emotional, and said she has no idea what has happened to her son. She has not heard from him and is very worried about him."[5] The detective's affidavit was submitted with a motion for reconsideration, which was denied. The court noted that Ms. Bergeson was now representing Casey on two cases, the drug case and the failure to appear, and if she were forced to testify before the grand jury, the attorney-client relationship would be severed. The district

---

[5]Subsequently, the defendant appeared and pleaded guilty to the drug charges.

court found that there was no compelling purpose in issuing a subpoena to Ms. Bergeson to testify before the grand jury that could outweigh the interest in maintaining continuity of the attorney-client relationship, so the court again exercised its discretion under Rule 17(c)(2) to quash the subpoena.

Analysis.

**[1]** Rule 17(c)(2) confers discretion on the district court to quash a grand jury subpoena if compliance would be "unreasonable or oppressive." We review orders quashing subpoenas under Rule 17(c)(2) for abuse of discretion.[6]

Although a grand jury's inquiry "is not to be limited narrowly,"[7] issuing a subpoena to a lawyer to testify against a client is an unusual step that always raises serious concerns, even absent any privilege. Ms. Bergeson concedes that the information sought in this case, whether she told her client the trial date, is not privileged. In determining whether a subpoena of the lawyer is "unreasonable or oppressive," the district court may properly consider, among other factors, whether compliance would likely destroy the attorney-client relationship, and whether the information sought from the lawyer is already available from other sources.

**[2]** The government argues that the district court committed legal error, reviewable de novo, by requiring a "compelling purpose" before enforcing a subpoena against a lawyer. "Compelling purpose" is not a *sine qua non* of enforcing such a subpoena,[8] but it is a legitimate factor for the district court to consider.[9] Because the judge gave several reasons for granting the motion to quash, his decision is best read as a discretionary one that did not posit "compelling purpose" as a *sine*

---

[6]*In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004).

[7]*Branzburg v. Hayes*, 408 U.S. 665, 688 (1972).

[8]*Id.* at 705-06.

[9]*United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991).

*qua non*. And it was quite sound for the district court to weigh in favor of quashing given that the government had ample evidence that Casey knew his trial date without Ms. Bergeson's testimony. That the government does not need the testimony bears on whether the subpoena is "unreasonable," and that it would destroy the attorney-client relationship bears on whether the subpoena is "oppressive."

In *In re Grand Jury Subpoena (Osterhoudt)*,[10] we upheld the district court's discretionary denial of a motion to quash, where the subpoena would only require written, non-privileged information to be provided to the grand jury, not testimony. In *Osterhoudt*, we declined to adopt a suggestion that enforcement of a subpoena against a lawyer for information about his client must be conditioned on a showing that the information sought was relevant, necessary, and unobtainable from another source.[11] But we did not reject consideration of these factors in the exercise of discretion, and said instead that concerns about abuse "are best resolved, not by a generalized inquiry, but by examination of the facts of each case in which the government seeks to compel counsel to produce evidence to determine whether there has been an abuse."[12] In *United States v. Perry*,[13] we held that post-indictment service of a subpoena on a target's counsel is not a per se violation of the Sixth Amendment and does not require reversal in the absence of a motion to quash or a showing of prejudice. We took note of the Justice Department's policy against such subpoenas that the district court considered in the case at bar, requiring high-level approval for a subpoena of attorneys to testify against their clients and requiring prosecutors to show that the need for the information outweighs the risk that the attorney will be disqualified.

---

[10]722 F.2d 591 (9th Cir. 1983).

[11]*Id.* at 594.

[12]*Id.* at 595 n.2.

[13]857 F.2d 1346 (9th Cir. 1988).

**[3]** Rule 17(c)(2) requires a discretionary, case-by-case inquiry. There is no rule of law that without some particular factor, the government cannot have the subpoena, or that with it, it can. The factors the district court must consider under Rule 17(c)(2) - unreasonableness and oppressiveness - cannot sensibly be converted into a mechanical rule enabling an escape from case-by-case judgment. The government is not automatically entitled to subpoena a lawyer to testify against his client merely because the Constitution does not prohibit it and the material is not privileged. The defendant is not automatically entitled to an order quashing such a subpoena merely because the government cannot show that no other source of testimony exists and that there is a compelling need for it to obtain an indictment. In concluding that "there can be no absolute rule"[14] and that Rule 17(c)(2) requires a case-by-case inquiry, we join the First Circuit and the Fifth Circuit.[15]

The government argues that where counsel is appointed rather than retained, as Ms. Bergeson was, a motion to quash has less force, because the defendant is not entitled to counsel of his choice, and another lawyer could be substituted if the attorney-client relationship were destroyed. This argument has no force. Though an indigent is not entitled to counsel of his choice, the government is not entitled to force an indigent's assigned lawyer out of the case.

**[4]** The government also argues that destruction of the attorney-client relationship will not necessarily result from compliance with the subpoena, while Casey, as intervenor, and Ms. Bergeson, citing Oregon ethical rules for attorneys,[16] maintain that it will. The district court made a finding, based on the Oregon Rules Professional of Conduct,[17] that it would.

---

[14]*In re Grand Jury Matters*, 751 F.2d 13, 19 (1st Cir. 1984).

[15]*In re Grand Jury Subpoena for Attorney Representing Criminal Defendant (Reyes-Requena)*, 913 F.2d 1118, 1127-1129 (5th Cir. 1990).

[16]Or. Rules of Prof. Conduct, Rule 3.7(c).

[17]Id.

Rule 17(c)(2) does not require a legal decision whether testimony of a lawyer against his client before a grand jury would necessarily destroy the attorney-client relationship. For purposes of the exercise of discretion, it is enough that the district judge think destruction likely, and the greater the likelihood, the greater the potential for oppressiveness. No matter what a lawyer told her client she said or had not said to the grand jury, the client would be unable to verify what the lawyer told him.

**[5]** There were good reasons for the district court's exercise of discretion. A client's confidence in his lawyer, and continuity of the attorney-client relationship, are critical to our system of justice. The Justice Department restraints on issuing subpoenas to lawyers that we discussed in *United States v. Perry*[18] and that the district court cited in this case are instructive on this point. Though these Justice Department directives are directions by an employer to its employees and not law, they demonstrate the recognition that the government has given to this fundamental interest. Issuing subpoenas to lawyers to compel them to testify against their clients invites all sorts of abuse.

That Ms. Bergeson's testimony might have been the simplest, clearest way to prove that she had told Casey his trial date does not make it necessary. All a federal grand jury needs to indict is "probable cause,"[19] and it can indict based on hearsay.[20]

**[6]** We do not suggest that a subpoena of a lawyer to testify against her client before a grand jury would always be unreasonable or oppressive. The circumstances, such as the risk of

---

[18]*United States v. Perry*, 857 F.2d 1346, 1347-48 (9th Cir. 1988).

[19]*Branzburg v. Hayes*, 408 U.S. 665, 743 n.2 (1972) (Stewart, J., dissenting).

[20]*United States v. Al Mudarris*, 695 F.2d 1182, 1185 (1983) ("It is well settled that an indictment may be based solely on hearsay.").

imminent physical harm to others, magnitude of the case, scarcity of evidence — all sorts of things that bear on reasonableness — can legitimately be weighed along with the potential harm from enforcing the subpoena. But in this case, the district court's exercise of its discretion to quash the subpoena was eminently reasonable.

AFFIRMED.