FILED

NOT FOR PUBLICATION

JUL 28 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 14-50141 |
| | ) | |
| Plaintiff - Appellee, | ) | D.C. No. 3:13-cr-00472-JAH-2 |
| | ) | |
| v. | ) | MEMORANDUM[*] |
| | ) | |
| DAVID JOSE RICO, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | No. 14-50280 |
| | ) | |
| Plaintiff - Appellee, | ) | D.C. No. 3:13-cr-00472-JAH-2 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID JOSE RICO, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JACK J. BOLTAX, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

Appeal from the United States District Court

_____

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted July 7, 2015
Pasadena, California

Before: REINHARDT, FERNANDEZ, and CLIFTON, Circuit Judges.

David Rico appeals his conviction for engaging in sex trafficking of a child

under the age of eighteen years,[1] and for conspiracy to so engage.[2]  Case No. 14-

50141.  In addition, Jack Boltax, Rico's attorney, appeals the district court's

imposition of monetary sanctions upon him for his conduct in issuing a subpoena.

Case No. 14-50280.  We affirm as to Rico and reverse as to Boltax.

I.  Rico's Appeal

A.  Rico first raises issues regarding the constitutionality and the

proper interpretation of § 1591.

Rico attacks the statute on the basis that it is void for vagueness.  We

disagree.  In the first place, he did not raise this argument before the district court

---

[1]See 18 U.S.C. § 1591.  All references to § 1591 hereafter are to 18 U.S.C. § 1591.  Moreover, unless otherwise stated, all references to § 1591 are to its provisions before it was amended on May 29, 2015, by the Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, § 108, 129 Stat. 227, 238–39.

[2]See 18 U.S.C. § 1594(c); see also id. § 1591.

and we therefore review for plain error,[3] but the standard is of little importance because whether reviewing for plain error or on our usual de novo standard,[4] there was no error in the first place.

"A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited . . . ." United States v. Williams, 553 U.S. 285, 304, 128 S. Ct. 1830, 1845, 170 L. Ed. 2d 650 (2008). We must examine the statute "as applied to the defendant." United States v. Jae Gab Kim, 449 F.3d 933, 942 (9th Cir. 2006); see also Williams, 553 U.S. at 304, 128 S. Ct. at 1845; United States v. Purdy, 264 F.3d 809, 811 (9th Cir. 2001). Rico's conviction is based on the provisions of § 1591 which preclude knowingly enticing, harboring, transporting, providing, obtaining or maintaining a person "knowing, or in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act,"[5] with the addition that "[i]n a prosecution . . . in which the defendant had a reasonable opportunity to observe the person . . . the

---

[3]See United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993); United States v. Mitchell, 568 F.3d 1147, 1150 (9th Cir. 2009).

[4]See United States v. Mincoff, 574 F.3d 1186, 1191–92 (9th Cir. 2009).

[5]§ 1591(a).

3

Government need not prove that the defendant knew that the person had not attained the age of 18 years."[6]

Rico first argues that the whole of § 1591(a) & (c) is vague because two other courts of appeals have construed the statute in different ways. Compare United States v. Robinson, 702 F.3d 22, 31–32 (2d Cir. 2012), with United States v. Mozie, 752 F.3d 1271, 1281–82 (11th Cir.) cert. denied, __ U.S. __, 135 S. Ct. 422, 190 L. Ed. 2d 305 (2014). We agree that their interpretations differ. However the mere fact that "'other courts of appeals differ in their definitions of a term[] does not mean that the term is void for vagueness.'" United States v. Davis, 36 F.3d 1424, 1434 (9th Cir. 1994). As it is, we do not think the statute is unduly vague as applied to Rico. While we find the Second Circuit's explication of the provisions persuasive, we need not decide the question because on either reading, the facts of this case would bring Rico well within the statutory terms. We do note, however, that Congress has now amended the statute to comport with the Second Circuit's approach. See Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, 129 Stat. 227; see also 18 U.S.C. § 1591(c) (2015) (if a defendant had the opportunity to observe the victim, "the Government need not prove that the defendant knew, or recklessly disregarded the fact" of the victim's age). Thus, this

---

[6]§ 1591(c).

4

issue should not trouble courts in the future.

Rico also argues that the phrase "a reasonable opportunity to observe" is itself impermissibly vague and ambiguous. However, the terms used in the phrase "are not esoteric or complicated terms devoid of common understanding." United States v. Osinger, 753 F.3d 939, 945 (9th Cir. 2014). Again, even if there could be circumstances when the statute would be unduly vague as to a defendant, the facts and circumstances of this case place it well within the plain prohibitions of the statute.

Rico next attacks the district court's instructions regarding the elements of the crimes. The district court instructed the jury in accordance with the construction of the statute approved in Robinson. Rico's principal argument is, in effect, that the district court should have used the construction set forth in Mozie.

Here, again, we see no reason to resolve that particular dispute. Based on the evidence before the jury, even if the instruction was in error, that error was harmless because "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." United States v. Anchrum, 590 F.3d 795, 801 (9th Cir. 2009) (internal quotation marks omitted). The evidence that Rico knew, had a reasonable opportunity to observe, and recklessly disregarded the victim's age was powerful. Thus, any error was harmless beyond a

reasonable doubt. See United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1197 (9th Cir. 2000) (en banc).

Rico also argues that the district court erred when it imported its definition of the substantive crime into the conspiracy count, because in charging conspiracy the indictment did not specifically mention the § 1591(c) portion of the substantive crime. That, he asserts, constituted a constructive amendment of the indictment. See United States v. Hartz, 458 F.3d 1011, 1019–20 (9th Cir. 2006); see also United States v. Garcia-Paz, 282 F.3d 1212, 1215–16 (9th Cir. 2002). We disagree. An indictment count that charges conspiracy "need not allege the offense that is the object of the conspiracy with the same precision as would be necessary where that offense is itself the crime charged." United States v. Lo, 231 F.3d 471, 481 (9th Cir. 2000). There can be little doubt that, taken as a whole, reasonable observation was an evident part of both counts of the indictment in the eyes of the grand jury. See United States v. Berger, 473 F.3d 1080, 1103 (9th Cir. 2007). Moreover, Rico could not have been misled or blind-sided. See Hartz, 458 F.3d at 1022–23.

B. Other Issues

(1) Rico argues that the district court erred when it admitted as a business record a letter sent by Time Warner to a government agent in response

6

to a subpoena, which was seeking an internet protocol address. See Fed. R. Evid. 803(6). We agree. The letter was not prepared in the regular course of business; it was prepared for use in litigation. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 321–22, 129 S. Ct. 2527, 2538, 174 L. Ed. 2d 314 (2009); United States v. Miller, 771 F.2d 1219, 1238 (9th Cir. 1985). Thus, it was improperly admitted. However, it added very little to the evidentiary mix, and did not substantially affect the verdict. See United States v. Morales, 720 F.3d 1194, 1199, 1203 (9th Cir. 2013). In short, the error was harmless.

(2) Rico also asserts error in the district court's sustaining of an objection to a question asked of the victim by Rico's counsel. We disagree. The district court did not abuse its discretion[7] when it sustained the objection on the basis that the question sought irrelevant evidence.[8] The district court had previously indicated that it would allow questions about the victim's mode of dress if they were limited to the relevant time frame. The question was not so limited.

(3) Rico finally claims that we should reverse because the district court erred when it quashed a subpoena directed by his counsel to the counsel for a co-defendant. The subpoena sought materials and testimony with

[7]See United States v. Alvarez, 358 F.3d 1194, 1216 (9th Cir. 2004).

[8]See United States v. Shabani, 48 F.3d 401, 403 (9th Cir. 1995).

7

which to impeach the testimony of the co-defendant. While, as we will explain hereafter, we do not find an abuse of discretion,[9] even if we did, the error would be harmless.[10] The subpoena was issued in order to obtain information with which to impeach the witness if she appeared to testify untruthfully, which she did not. Thus, Rico neither suffered nor points to any prejudice.

Therefore, we affirm Rico's conviction.

II. Boltax's Appeal

When the district court quashed the subpoena that Boltax directed at Rico's co-defendant's attorney, it considered the issuance unreasonable and, therefore, ordered him to show cause why he should not be sanctioned. Ultimately, it did impose sanctions. Boltax appealed, and we reverse.

The district court imposed sanctions pursuant to its inherent power and the provisions of 28 U.S.C. § 1927. We review its imposition of sanctions for abuse of discretion. See Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1218 (9th Cir. 2010); see also United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

---

[9]See United States v. Bergeson, 425 F.3d 1221, 1224 (9th Cir. 2005).

[10]See United States v. Edwards, 235 F.3d 1173, 1178–79 (9th Cir. 2000) (per curiam).

8

At the threshold it is important to consider whether the district court abused

its discretion when it quashed the subpoena.  See Bergeson, 425 F.3d at 1224.  If it

did err, an award of sanctions could not be upheld.  The court did not err.  Despite

what Boltax argues, the subpoena was quite broad.  Besides commanding Mr.

Garrison, the co-defendant's attorney, to appear to testify, the subpoena ordered

him to bring: "All notes and/or summaries of any interview or debrief between

Assistant U.S. Attorney A. Serano [AUSA] and/or law enforcement including but

not limited to interview and/or debrief held on or about August 2, 2013 with co-

defendant . . . ."  (emphasis added).  Notably, the subpoena was not limited to any

particular interview with any particular person, nor was it limited to any particular

type of note or summary.  And lest there be any doubt about what was intended,

Boltax sent the AUSA a missive indicating that it was Boltax's intention to

question Garrison about the "exposure of his client under the plea agreement if she

doesn't cooperate and that cooperation will get her a recommendation from the

government for less time."  He also indicated that he might question Garrison

about "what his client said during the debrief session."

The district court had discretion to quash the subpoena if it was

"unreasonable or oppressive";[11] the court expressly determined that it was both. The demands of the subpoena implicated the attorney-client privilege,[12] attorney work product concerns,[13] and the attorney-client relationship.[14]

The courts take all of those attorney-client protections, which were erected for good and sufficient public policy purposes, very seriously. It is true that the attorney-client privilege would not offer protection to disclosures made by Garrison's client to the AUSA. But, the district court did not put weight upon the attorney-client privilege. It did put weight on the work product privilege, and rightly so. Similarly, it put weight on the overall need to protect the attorney-client relationship. Boltax's general concerns that the witness might lie did not outweigh the dangers posed by his course of action. The district court did not abuse its discretion when it quashed the subpoena based on its scope and timing.

The court then sanctioned Boltax by relying on its inherent power[15] and on

---

[11]Fed. R. Crim. P. 17(c)(2).

[12]See United States v. Ruehle, 583 F.3d 600, 612 (9th Cir. 2009); United States v. Bauer, 132 F.3d 504, 510 (9th Cir. 1997).

[13]See Hickman v. Taylor, 329 U.S. 495, 510–11, 67 S. Ct. 385, 393–94, 91 L. Ed. 451 (1947)

[14]See Bergeson, 425 F.3d at 1224–27.

[15]See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 764–65, 100 S. Ct.
(continued...)

the statute that authorizes sanctions against an attorney who unnecessarily and vexatiously litigates.[16] However, a court's inherent power must be utilized with caution and restraint,[17] although it can be used when counsel's actions are in "bad faith" or are "tantamount to bad faith."[18] Imposition of sanctions under § 1927 requires similar, if slightly different, determinations. The statute indicates that actions that multiply the proceedings must be both unreasonable and vexatious, and we have also stated that recklessness alone will not suffice. What is required is recklessness plus something more — for example knowledge, intent to harass, or frivolousness. See B.K.B., 276 F.3d at 1107; see also In re Girardi, 611 F.3d 1027, 1061 (9th Cir. 2010);[19] Fink, 239 F.3d at 993–94. The district court recognized those standards.

That leaves the question of whether the district court applied those correct

_____

[15](...continued)
2455, 2463, 65 L. Ed. 2d 488 (1980).

[16]28 U.S.C. § 1927.

[17]Roadway Express, 447 U.S. at 764, 100 S. Ct. at 2463.

[18]Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001); see also B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1108 (9th Cir. 2002).

[19]The standard appears explicitly in the appendix, which is a report by Judge Tashima to the panel that is adopted in full by the panel. See In re Girardi, 611 F.3d at 1034–35.

11

legal standards correctly.  Hinkson, 585 F.3d at 1262.  Our careful review of the record convinces us that it did not.  Not every overbroad subpoena is an occasion for sanctions;[20] we have said that in general, "sanctions should be reserved for the 'rare and exceptional case.'"[21]  This record does not present a rare or exceptional situation.  True it is that Boltax issued an inappropriately broad subpoena without sufficiently considering the importance of the protections that must surround an attorney's relationship and duties toward his client.  Despite that insensitivity, we are unable to see how it meets the level of egregiousness we have seen in other cases where sanctions have been imposed and upheld.[22]  Moreover, the mere issuance of the overbroad subpoena would not suffice to sustain sanctions.  See Mount Hope, 705 F.3d at 429–30.  Here, at least, Boltax submitted evidence that

---

[20]See Mount Hope Church v. Bash Back!, 705 F.3d 418, 423, 429 (9th Cir. 2012).

[21]Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997).

[22]See, e.g., In re Girardi, 611 F.3d at 1062–63 (respondents intentionally and recklessly misled the court with false statements); Lahiri, 606 F.3d at 1221–23 (cumulative acts over five years evidenced a pattern of bad faith warranting sanctions); B.K.B., 276 F.3d at 1107–08 (attorney's knowing and reckless introduction of inadmissible evidence);  Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118–19 (9th Cir. 2000) (lawyer insufficiently informed client regarding a temporary restraining order); Salstrom v. Citicorp Credit Servs., Inc., 74 F.3d 183, 185 (9th Cir. 1996) (lawyer made too much out of a simple debt collection matter).

12

other attorneys deeply involved in representing defendants in criminal cases had used subpoenas directed to counsel where the need for the requested information seemed important under the circumstances, or had discussed their use at criminal-law-practitioner conferences.  We doubt that the practice is widespread; nor should it be.  Important concerns weigh on both sides of the balance: on one side, the need to protect the sanctity of the attorney-client relationship for everyone, and on the other, the need to protect everyone's right to vigorous, effective advocacy by counsel.  Both of those are essential to the proper functioning of our system of justice.  Both can be threatened when a subpoena directed to another party's attorney is issued.  Proper praxis requires that counsel show a great deal of care when considering, drafting and issuing subpoenas of that kind.  Boltax was not careful enough, but that lapse under the circumstances was not sufficient to support a discretionary determination that his actions were so inappropriate that they demonstrated bad faith, or were tantamount to bad faith, or were reckless, or vexatious.  Therefore, the district court abused its discretion when it imposed sanctions upon him, and the award must be reversed.

AFFIRMED as to Rico (No. 14-50141).  REVERSED as to Boltax (No. 14-50280).

13

FILED

JUL 28 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*United States of America v. Boltax, 14-50280*
Reinhardt, Circuit Judge, concurring:

I concur in the memorandum disposition. I would add that I do not construe our disposition as a flat ruling that defense counsel may never issue a narrow subpoena to an attorney regarding what occurred at a conference between the attorney's client and the prosecuting authority, as it may well be critical to whether there has been a violation of *Brady* or *Napue*. Whether defense counsel is always required to rely only on the notes taken by persons on the prosecution's side is a question that should be decided, if at all, in a case with a fuller record. There are of course some exceptions to the work product rule. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947). These exceptions have not yet been fully explored by the courts. Whether a case like this, with different facts, could constitute one of those exceptions is a question we need not answer here. *See also In re Sealed Case*, 124 F.3d 230, 236 (D.C. Cir. 1997) (*rev'd on other grounds sub nom. Swidler & Berlin v. United States*, 524 U.S. 399 (1998)) (finding that an attorney's contemporaneous notes of an interview in which he did not (primarily) direct the conversation are not given iron-clad protection by the work product rule).