# United States Court of Appeals
# For the Second Circuit

August Term 2024
Submitted: December 20, 2024
Decided: June 4, 2025

No. 23-6337-cr(L)

UNITED STATES OF AMERICA

*Appellee,*

*v.*

MARTIN CONCEPCION

*Defendant-Appellant.*<sup>*</sup>

Appeal from the United States District Court
for the Southern District of New York
No. 19-cr-883
J. Paul Oetken, *Judge.*

---

<sup>*</sup> The Clerk of Court is respectfully directed to amend the caption as set forth above.

Before:       CALABRESI, PARK, and NATHAN, *Circuit Judge*s.

A jury convicted Martin Concepcion of offenses related to sex trafficking a minor.  On appeal, Concepcion raises two arguments. First, he claims that 18 U.S.C. § 1591(c)—which exempts the government from proving that a defendant knew or recklessly disregarded the age of a sex-trafficking victim when the defendant had a "reasonable opportunity to observe" the victim—is void for vagueness.  Second, he claims that the district court erred by not providing the jury with a special verdict form.  We reject both arguments.  Section 1591(c) is not unconstitutionally vague, and the district court did not err in its use of a general verdict form.  The judgment of the district court is **AFFIRMED**.

––––––––

> Bobbi C. Sternheim, Law Offices of Bobbi C. Sternheim, New York, NY, *for Defendant-Appellant*.
>
> David J. Robles, Sarah L. Kushner, Olga I. Zverovich, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

––––––––

PARK, *Circuit Judge*:

A jury convicted Martin Concepcion of offenses related to sex trafficking a minor. On appeal, Concepcion raises two arguments. First, he claims that 18 U.S.C. § 1591(c)—which exempts the government from proving that a defendant knew or recklessly disregarded the age of a sex-trafficking victim when the defendant had a "reasonable opportunity to observe" the victim—is void for vagueness. Second, he claims that the district court erred by not providing the jury with a special verdict form. We reject both arguments. Section 1591(c) is not unconstitutionally vague, and the district court did not err in its use of a general verdict form. The judgment of the district court is affirmed.

## I. BACKGROUND

A.  Factual Background

In October 2019, Martin Concepcion met Camilla Rodriguez— a sixteen-year-old runaway—outside of a Bronx bodega.[1] Along with his roommates Michael Valdez and Ryan Diaz, Concepcion invited Rodriguez to join them at a liquor store and then come home with them. At their apartment, Concepcion and Valdez served Rodriguez drug-laced alcohol, brought her into a bathroom, and filmed themselves having sex with her. Afterward, Concepcion told Rodriguez that she was "part of the group now."

Concepcion explained to Valdez and Diaz that Rodriguez was "the bag"—*i.e.*, a way to make money. So that same night, the three

---

[1] "Camilla Rodriguez" is the name under which the victim testified. The parties refer to her as "Minor Victim-1."

men set to work prostituting her. They took explicit photographs of Rodriguez and posted them to a website called CityXGuide.com, with Concepcion drafting advertisements, setting prices, and teaching Valdez and Diaz how to upload content. And they messaged directly with interested parties. By the next night, they had lined up four clients.

A sex-trafficking operation ensued. Each night for three weeks, Concepcion, Valdez, and Diaz prostituted Rodriguez to multiple men. They dressed her in lingerie, taught her to screen for police, and took cash from her after each session. They also advertised Rodriguez as part of a "two-girl special" with another prostitute. In total, they solicited more than a thousand clients.

The operation involved violence. While Rodriguez was with clients in Valdez's bedroom, Concepcion, Valdez, and Diaz waited in the apartment, armed with a gun. After Rodriguez once escaped to a friend, the group sent her threatening text messages and searched for her on the streets. When Rodriguez gave Concepcion "attitude," he struck her in the face. For his part, Valdez attacked Rodriguez on multiple occasions.

When Rodriguez first met the group, she claimed to be eighteen. But a woman trafficked with her warned Concepcion that Rodriguez "looked young." Separately, Diaz admitted to Valdez that Rodriguez "give[s] me young vibes." Suspicious of her age, Concepcion and Valdez eventually asked Rodriguez about her "baby face." In response, Rodriguez confirmed that she was only sixteen. Still, the operation continued.

On October 21, 2019, Concepcion and Valdez used an Instagram livestream to flaunt cash earned from their trafficking. While playing with a gun, Valdez accidentally shot Concepcion's hand. Injured, Concepcion left the apartment and never returned, ending his formal involvement with the operation. But Valdez continued the scheme with other co-conspirators and remained in contact with Concepcion.

Early in November 2019, Rodriguez attempted another escape. But Valdez found her on the street and forced her back to the apartment, where he beat her and threatened to shoot her. For the next several days, Valdez locked Rodriguez inside his bedroom, making her urinate into cups.

On November 7, 2019, law enforcement agents found Rodriguez swollen and bruised. On November 8, Valdez texted Concepcion to "lay low" because "feds ran up in my crib[] . . . for that lil bitch." Appellee's Br. at 8. Two days later, officers arrested Valdez and Diaz. But Concepcion remained a fugitive for the next eleven months, until his arrest in October 2020.

B.     Procedural History

In April 2022, the government filed a three-count indictment against Concepcion. Count One charged him with sex-trafficking conspiracy, in violation of 18 U.S.C. § 1594(c). Count Two charged him with sex trafficking a minor, in violation of 18 U.S.C. § 1591. And Count Three charged him with conspiracy to use interstate commerce to promote unlawful activity, in violation of 18 U.S.C. § 371.

In July 2022, Concepcion proceeded to trial. After the close of evidence, Concepcion moved for a judgment of acquittal on Count

5

Two under Federal Rule of Criminal Procedure 29, arguing that "the government should have to prove that the defendant had knowledge that the victim was 16 years old, and we don't believe that the government sufficiently can show that." Appellee's Br. at 14. The district court denied the motion without prejudice.

At the charge conference, Concepcion objected to language in Count Two stating that the knowledge element of 18 U.S.C. § 1591(c) could be satisfied by actual knowledge that the victim was underage, "reckless disregard" of that fact, or a "reasonable opportunity to observe" the victim. He argued that the phrase "reasonable opportunity to observe" is "unconstitutionally vague" because "it's left to a multitude of interpretations that really affect . . . due process rights." Dist. Ct. Dkt. 138, at 447. He also objected on similar grounds to the government's proposed instructions that, "[w]hen considering whether the defendant had a reasonable opportunity to observe the victim, you should use the ordinary, everyday definitions of these terms . . . [and] may find that the defendant had a reasonable opportunity to observe the victim if the defendant had in person, face-to-face interaction with the victim." *Id.* at 446 (quotation marks omitted). The district court overruled both objections, finding that the instructions were "consistent with Second Circuit case law . . . saying . . . one or two opportunities to physically observe someone is enough for reasonable opportunity." *Id.* And in explaining each element of the charged offenses, the district court provided the jury with a general verdict form.

In August 2022, a jury found Concepcion guilty on all three counts. In March 2023, the district court sentenced him to 144 months of imprisonment, with a five-year term of supervised release.

## II. DISCUSSION

Concepcion argues that the sex-trafficking statute underlying his conviction is unconstitutionally vague. He also claims that the district court erred by using a general verdict form instead of a special verdict form. We reject both arguments.

A.    Statutory Framework

Congress enacted 18 U.S.C. § 1591 as part of the Trafficking Victims Protection Act of 2000 ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000). The TVPA aimed "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *United States v. Raniere*, 55 F.4th 354, 360 (2d Cir. 2022) (quoting 22 U.S.C. § 7101(a) (2000)). Two of its provisions—subsections (a) and (c)—are relevant here. Under § 1591(a):

> Whoever *knowingly* . . . in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . *knowing, or . . . in reckless disregard of the fact*, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a) (emphasis added). And § 1591(c) provides:

> In a prosecution . . . in which the defendant had *a reasonable opportunity to observe* the person so recruited, enticed, harbored, transported, provided, obtained,

> maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

*Id.* § 1591(c) (emphasis added).

That is how § 1591 reads today. But "as originally enacted the statute required the government to prove the defendant knew the child victim was a minor." *United States v. Duong*, 848 F.3d 928, 932 (10th Cir. 2017). So until 2008, § 1591(c) did not exist and § 1591(a) applied only to those who sex trafficked minors "*knowing . . . that the person has not attained the age of 18 years.*" 114 Stat. at 1487 (emphasis added).

That changed when Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044, 5044 (2008), to "enhance measures to combat trafficking in persons." The TVPRA made two key amendments to the statutory scheme. First, it added another way to prove *mens rea* under § 1591(a)—*i.e.*, if someone sex trafficked minors knowing "*or in reckless disregard of*" of the victim's age. *Id.* at 5069 (emphasis added). Second, it created a new provision—§ 1591(c)—providing that in a "prosecution under subsection (a)(1) in which the defendant had *a reasonable opportunity to observe*" the victim, the government "need not prove that the defendant knew that the person had not attained the age of 18 years." *Id.* (emphasis added).

In the wake of the TVPRA, courts struggled with a "perceived tension" between § 1591(a) and § 1591(c). *See, e.g., United States v. Williams*, 564 F. App'x 568, 570 n.2 (11th Cir. 2014). But in an issue of first impression, this Court held that "§ 1591(c) supplies an *alternative* to proving any *mens rea* with regard to the defendant's awareness of the victim's age." *United States v. Robinson*, 702 F.3d 22, 32 (2d Cir. 2012). We explained that the "most natural" reading of § 1591(c) is that "proof that the defendant had a reasonable opportunity to observe the victim may substitute for proof that the defendant knew the victim's underage status." *Id.* And we noted that our reading gave effect to the "obvious goal" of § 1591(c): to "reduce the government's burden where the defendant had a reasonable opportunity to observe the victim." *Id.*

But *Robinson* did not immediately end the debate. Other circuits upheld § 1591(a) convictions under § 1591(c)'s opportunity-to-observe standard, but "acknowledged the difficulties with the [2008 amendment's] syntactical structure." *United States v. Copeland*, 820 F.3d 809, 813 n.7 (5th Cir. 2016). The Eleventh Circuit, for instance, construed § 1591 as requiring *either* that a defendant knew the victim was underage *or* that a defendant had a reasonable opportunity to observe and recklessly disregarded the victim's age. *See United States v. Mozie*, 752 F.3d 1271, 1282 (11th Cir. 2014). And the Sixth Circuit did the same. *See United States v. Jackson*, 622 F. App'x 526, 528 (6th Cir. 2015) ("[I]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person . . . [r]eckless disregard of the victims' age is sufficient to obtain a conviction." (quotation marks omitted)).

So Congress again amended the statute. Adopting our decision in *Robinson*, Congress added to § 1591(c) the words "reckless[] disregard[]." Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, 129 Stat. 227, 239 (2015); *see also United States v. Rico*, 619 F. App'x 595, 598 (9th Cir. 2015) ("Congress has now amended the statute to comport with the Second Circuit's approach."). In so doing, "Congress made clear that, when the government proves that the defendant had a reasonable opportunity to observe the victim, it need not prove either actual knowledge *or* reckless disregard." *United States v. Whyte*, 928 F.3d 1317, 1329-30 (11th Cir. 2019).

B.     Void-for-Vagueness Challenge

A criminal statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008) (quotation marks omitted). The Supreme Court has conceived of this doctrine as "a basic principle of due process," *Slattery v. Hochul*, 61 F.4th 278, 294 (2d Cir. 2023) (quotation marks omitted), as well as "a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not," *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018).

"[W]e review *de novo* challenges to the constitutionality of a statute." *United States v. Suquilanda*, 116 F.4th 129, 135 (2d Cir. 2024). "Vagueness challenges typically concern a statute 'as applied' to the challenger, who professes that the law in question cannot constitutionally be applied to the challenger's individual

10

circumstances." *United States v. Requena*, 980 F.3d 30, 39 (2d Cir. 2020) (quotation marks omitted). "But a party may also challenge a statute as vague *on its face*, asserting that it is so fatally indefinite that it cannot constitutionally be applied to anyone." *Id.* (quotation marks omitted). Here, Concepcion focuses on a facial challenge, but also raises an as-applied challenge. Neither survives.

### 1.    *As-Applied Challenge*

We begin with the as-applied challenge. *See Vasquez v. Garland*, 80 F.4th 422, 435 (2d Cir. 2023) ("Absent First Amendment concerns, we assess vagueness challenges to a statute as applied, rather than facially."). In an "ordinary 'as-applied' claim," the challenger "asserts that a law cannot constitutionally be applied to [his] individual circumstances." *Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018). That argument is futile for Concepcion.

In October 2019, Concepcion embarked on three weeks of intimate conduct with Rodriguez. He had sex with her. He dressed her in lingerie and makeup. He took explicit pictures of her, which he used for digital advertisements and kept on his iCloud account. He taught her what to say to clients. Each night, he collected her money and shared her bed. He asked her about her "baby face." And in time, he learned directly from her that she was sixteen years old.

Such contact supplied more than a reasonable opportunity to observe Rodriguez. We have held that two in-person interactions—involving a "face-to-face discussion" and the collection of money—suffice under § 1591(c). *United States v. Alcius*, 952 F.3d 83, 87 (2d Cir. 2020). So three weeks living and sleeping together unquestionably satisfies the statutory requirement. Accordingly, Concepcion's

11

conduct is "clearly proscribed" by the statute, *United States v. Scott*, 979 F.3d 986, 993 (2d Cir. 2020) (quotation marks omitted), so he cannot claim to have been deprived of "a reasonable opportunity to know what is prohibited," *Rubin*, 544 F.3d at 468 (quotation marks omitted).

### 2. *Facial Challenge*

"[W]e have often declined to entertain facial challenges where the challenger asserts no infringement of First Amendment or other fundamental rights protected by the Constitution." *Requena*, 980 F.3d at 40. But "[n]either the Supreme Court nor our Court has definitively resolved whether facial vagueness challenges not based on the First Amendment may proceed against statutes that can constitutionally be applied to the challenger's *own* conduct." *Id.* So we next consider Concepcion's facial challenge to "facilitate [its] definitive rejection." *Id.*

To "succeed on a facial challenge, 'the challenger must establish that *no set of circumstances* exists under which the Act would be valid.'" *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). That makes facial attacks "the most difficult challenge to mount successfully." *Salerno*, 481 U.S. at 745. And this case is no different. As discussed above, the statute is *not* vague in the context of Concepcion's own circumstances.

But more fundamentally, the phrase "reasonable opportunity to observe" is hardly vague. It neither "fails to provide a person of ordinary intelligence fair notice of what is prohibited" nor is "so standardless that it authorizes or encourages seriously discriminatory

enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). To the contrary, it uses "familiar legal concepts that have played an integral role in defining proscribed conduct over the years." *Mozie*, 752 F.3d at 1283. Indeed, we have already made clear that § 1591(c) refers to "in person . . . interactions enabl[ing one] to form her own assessment of [a victim's] age." *Alcius*, 952 F.3d at 87.

The language of § 1591(c) is also unlike language in statutes that are unconstitutionally vague. For example, the Supreme Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306; *see Coates v. Cincinnati*, 402 U.S. 611, 614 (1971); *Reno v. ACLU*, 521 U.S. 844, 870-874 (1997). So too statutes whose "archaic language"—criminalizing "vagabonds," "common night walkers," and "habitual loafers"— "fail[ed] to give . . . fair notice" of the proscribed conduct and "encourage[d] arbitrary and erratic arrests." *Papachristou v. Jacksonville*, 405 U.S. 156, 158 n.1, 162 (1972) (quotation marks omitted). And more recently, the Supreme Court has voided clauses that required "divining [whether] the conduct entailed in a crime's *ordinary case*" posed a "substantial risk," because such analyses prove "excessively speculative" and "essentially inscrutable." *Sessions*, 584 U.S. at 160-61 (quotation marks omitted) (emphasis added).

Those examples bear little resemblance to § 1591(c). Far from spawning confusion, a "reasonable opportunity to observe" lends itself to straightforward interpretation. That is because the "terms used in the phrase are not esoteric or complicated terms devoid of

13

common understanding." *Rico*, 619 F. App'x at 599 (quotation marks omitted). So the "likelihood that anyone would not understand any of those common words seems quite remote." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Concepcion maintains otherwise. He offers three arguments for why § 1591(c) is unconstitutional. All fail.

First, Concepcion takes issue with the fact that the statute does not define "reasonable opportunity to observe" or its components. But a statutory term is not impermissibly vague simply because it lacks a statutory definition. *See, e.g.*, *United States v. Wedd*, 993 F.3d 104, 124 (2d Cir. 2021) (rejecting a vagueness challenge against an undefined statutory term); *Arriaga v. Mukasey*, 521 F.3d 219, 222-23, 227-29 (2d Cir. 2008) (same). To be sure, the absence of a statutory definition can be a relevant consideration in the void-for-vagueness inquiry. *See Williams*, 553 U.S. at 306. Still, "the plain meaning of the [statute]'s wording," *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 188 (2d Cir. 2010), the use of "familiar legal concepts," *Mozie*, 752 F.3d at 1283, and—as explained below—a scienter requirement defeat a vagueness challenge.

Second, Concepcion raises a series of hypotheticals. Noting that § 1591(c) does not make clear whether to focus on "the reasonableness of the opportunity to observe, or the reasonableness of the conclusion drawn from observation," he considers whether the phrase encompasses "hearing" and "social interaction," then asks whether the statute exempts blind defendants from prosecution. Appellant Br. at 17-18 (quotation marks omitted). That leads him to question, among other things, whether the statute accounts for

14

victims who lie about their age. And on the basis of those inquiries, Concepcion concludes that § 1591(c) "fails to provide the requisite guidelines to ensure consistent enforcement." *Id.* at 18.

But "[i]t will always be true that the fertile legal imagination can conjure up hypothetical cases in which the meaning of disputed terms will be in nice question." *Grayned v. City of Rockford*, 408 U.S. 104, 110 n.15 (1972) (cleaned up). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (quotation marks omitted). So "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill*, 530 U.S. at 733 (quotation marks omitted). That is the case here.

Third, Concepcion argues that § 1591(c) allows the government to criminalize mere negligence. But that ignores that § 1591(a) still includes a scienter requirement, which helps to "mitigate a law's vagueness." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). Under § 1591(a), the government must show that the defendant *knew* or *recklessly disregarded* the fact that that the victim "[would] be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). So even if § 1591(c) imposes "strict liability with regard to the defendant's awareness of the victim's age," *Robinson*, 702 F.3d at 26, it "does not make § 1591 a strict liability criminal offense," *United States v. Koech*, 992 F.3d 686, 688 (8th Cir. 2021). *See also Copeland*, 820 F.3d at 812 n.6 ("§ 1591 does not actually impose 'strict liability'

15

because the statute, throughout its revisions, has retained a traditional scienter requirement.").

Nor does § 1591(c) create a new type of offense. "Subsection (c) . . . does not state a separate offense; it expressly refers to 'prosecution[s] under subsection (a)(1)' and it provides 'an alternative to proving any mens rea with regard to the defendant's awareness of the victim's age.'" *United States v. Graham*, 707 F. App'x 23, 27 (2d Cir. 2017) (quoting *Robinson*, 702 F.3d at 32). Arguing otherwise misapprehends § 1591(a)'s relationship with § 1591(c). "By its plain terms, § 1591(c) does not delineate prohibited acts, it rationally modifies how the government may prove § 1591(a)(1)'s *mens rea* requirements when the defendant had a reasonable opportunity to observe the age of his sex trafficking victim." *Koech*, 992 F.3d at 690.

The Eighth and Eleventh Circuits have rejected the argument that § 1591(c) is void for vagueness. *See Koech*, 992 F.3d at 690 ("[T]he term reasonable opportunity to observe provide[s] a person of ordinary intelligence fair notice of what is prohibited." (quotation marks omitted)); *Whyte*, 928 F.3d at 1331 (foreclosing claims that "the 'undefined and elusive concept' of a 'reasonable opportunity to observe' is unconstitutionally vague"). And the Ninth Circuit has gestured at the same in an unpublished opinion that endorsed as "persuasive" *Robinson*'s reading of the statute. *Rico*, 619 F. App'x at 598-99. Today, we join our sister circuits. Section 1591(c) is not void for vagueness, so Concepcion's first challenge fails.

C.    <u>Verdict-Form Challenge</u>

Concepcion's second claim is that the district court erred by not providing the jury with a special verdict form. That argument is meritless.

If a defendant "failed to object . . . to the District Court's use of a general verdict form, we review the[] claim[] on appeal under a plain error standard," granting relief only "if there was (1) error, (2) that is plain, and (3) affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Bell*, 584 F.3d 478, 484 (2d Cir. 2009) (quotation marks omitted).

With respect to Count Two, the district court instructed the jury that the government needed to prove three elements beyond a reasonable doubt: "Prohibited Conduct (Element One), Age of Minor (Element Two), and In or Affecting Interstate Commerce (Element Three)." Appellant Br. at 21. The district court further explained that:

> [A]s to the victim's age, the government can satisfy its burden of proof by proving beyond a reasonable doubt any one of the following: *One*, that the defendant actually knew that the victim at issue was under the age of 18. *Two*, except as to the act of advertising, that the defendant was in reckless disregard of the fact that the victim was under the age of 18. Or *three*, if the defendant himself recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited the victim at issue, but not if the defendant only

17

> advertised the victim at issue, that the defendant had a
> reasonable opportunity to observe the victim.

App'x at 56-57 (emphasis added).

According to Concepcion, those instructions required special findings. Without such a verdict sheet, he insists, we are left with four ambiguities that "undermine[] the certainty of the verdict." Appellant Br. at 25. First, whether the jury found Concepcion guilty of § 1591(a)(1) or § 1591(a)(2). Second, whether the government proved beyond a reasonable doubt that Concepcion benefited from "advertising" Rodriguez. Third, whether the government was relieved of the need to prove beyond a reasonable doubt that Concepcion knew or recklessly disregarded that Rodriguez was not eighteen. And fourth, whether the jury's findings were indeed unanimous.

We disagree. This Court has a "stated preference for special interrogatories in particularly complex criminal cases." *United States v. Ogando*, 968 F.2d 146, 149 (2d Cir. 1992). But outside of such cases, we have emphasized "the criminal law's historical preference for general verdicts" and "traditional distaste for special interrogatories." *United States v. Coonan*, 839 F.2d 886, 891 (2d Cir. 1988). And while the Supreme Court has stopped short of holding "that special verdicts in criminal cases are *never* appropriate," it has "call[ed] for caution" in "the absence of a Criminal Rule authorizing special verdicts" and suggested that special verdict forms are best used in "complex [RICO] cases." *Black v. United States*, 561 U.S. 465, 472 & n.11 (2010) (emphasis added); *see also United States v. Pimentel*, 346 F.3d 285, 305 (2d Cir. 2003) ("[W]e also strongly encourage the use of special verdict forms

in cases alleging multiple racketeering acts to facilitate appellate review.").

This is not a complex criminal case requiring a special verdict form. We "commit the decision of whether and how to utilize special interrogatories . . . to the broad discretion of the district court," eschewing "bright-line rules for determining when such interrogatories should be employed." *Ogando*, 968 F.2d at 149. So a "district court's refusal to require a special verdict" cannot "provide an independent basis for reversing an otherwise valid conviction." *United States v. Applins*, 637 F.3d 59, 83 (2d Cir. 2011) (quotation marks omitted).

Concepcion never objected below to the use of a general verdict form. Although he now argues that the need for special findings is "built into the statute," he identifies no deficiency in the district court's instructions. Appellant Br. at 25. Nor does he point to anything in the record to overcome the "presumption that jurors follow the instructions they are given." *United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010). We thus find no error—let alone plain error—in the district court's decision to use a general verdict form.

## III. CONCLUSION

The judgment of the district court is affirmed.