14-2676-cr
*United States v. Tomas Olazabal*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of May, two thousand fifteen.

PRESENT:   GUIDO CALABRESI,
           JOSÉ A. CABRANES,
           CHRISTOPHER F. DRONEY,
                      *Circuit Judges.*

---

UNITED STATES OF AMERICA,

　　　　*Appellant,*

　　　　　　v.                                    No. 14-2676-cr

TOMAS OLAZABAL,

　　　　*Defendant-Appellee.*

---

**FOR APPELLANT:**                MARK S. DETERMAN (Gregory Victor Davis,
                                 Frank P. Cihlar, *on the brief*), for Tamara W.
                                 Ashford, Acting Assistant Attorney General,
                                 Tax Division, Washington D.C.; Loretta E.
                                 Lynch, United States Attorney for the Eastern
                                 District of New York, *of counsel.*

**FOR DEFENDANT-APPELLEE:**      VINOO P. VARGHESE, Varghese & Associates,
                                 P.C., New York, NY.

Appeal from a June 10, 2014 order of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge).*

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court granting a new trial is **AFFIRMED**.

On March 13, 2014, after a three-day trial, a jury found Tomas Olazabal guilty of two counts of making and subscribing to a false tax return for fiscal years 2007 and 2008. Olazabal subsequently filed a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the alternative, a new trial pursuant to Rule 33. On June 10, 2014, the District Court denied defendant's motion for a judgment of acquittal but granted his motion for a new trial. This appeal by the government followed.

After a review of the record, we affirm the District Court's order granting Olazabal a new trial.

## BACKGROUND

We assume the parties' familiarity with the underlying facts and procedural history of the case, which are set forth more fully in the District Court's opinion, *see United States v. Olazabal*, No. 13 Cr. 467 (BMC), Decision and Order (E.D.N.Y. June 10, 2014), Spec. App. at 1-21, and we highlight here only the most relevant evidence adduced at trial. In 2005, Olazabal, a Peruvian immigrant, incorporated Tupac Construction, a subcontracting business that performed welding work for construction projects. As Tupac's principal, Olazabal was responsible for operating the business, hiring and paying workers (some of whom were undocumented aliens paid exclusively in cash), managing company finances, and paying taxes. Olazabal maintained a business bank account at TD Bank and also frequently used a check cashing service, KS Financial ("KS").

In 2006, Olazabal hired Mazorra Business Services ("MBS") to provide accounting services and prepare his payroll, sales, personal, and corporate taxes. MBS served approximately 4,000 clients and charged a low, flat fee of $350 for tax return preparation. Though Olazabal dealt primarily with MBS employee Lorena LeTellier for day-to-day payroll accounting as well as initial work on his corporate tax return, the government did not call LeTellier to testify. Instead, MBS owner Renan Mazorra was the government's principal witness at trial.

Mazorra testified that he met with Olazabal for only approximately 30 minutes each year to complete Tupac's corporate tax returns for fiscal years 2007 and 2008. During the first of the two meetings, Mazorra testified that Olazabal verbally informed him that Tupac's annual gross receipts were $183,487, of which only $4,874 was recorded as "compensation of officers." Mazorra testified that he did not question the accuracy of these numbers. App. Vol. 1 at 129-30. Tupac's corporate

return for the following year, which Mazorra prepared, reflected similar disproportionality between gross receipts, which totaled $1,315,028 in 2008, and the reported compensation of officers, which amounted to a mere $41,711 in 2008. *Id.* at 138-41; Spec. App. at 16. Mazorra testified that he asked Olazabal about the increase in 2008 income, which defendant attributed to lucrative new contracts, but Mazorra did not inquire as to why Tupac paid so little in salaries in comparison with its earnings. *Id.* Mazorra further testified that Olazabal did not offer information about Tupac's use of a third-party check-cashing service. *Id.* at 132, 141.

Olazabal then took the stand in his own defense and disputed Mazorra's testimony on the absence of information about Tupac's check-cashing transactions. On the contrary, Olazabal testified that in his initial meetings he informed his tax preparer that he used cash to pay some of his workers. Olazabal further testified that he thereafter clarified to both MBS employee LeTellier and to Mazorra himself that he used the services of a check-casher. According to Olazabal, both LeTellier and Mazorra told him not to worry about it. App. Vol. 2 at 283-86, 295-96.

At trial, it emerged that Tupac had underreported its gross receipts for 2007 and 2008 by $1,584,076.82 and that Olazabal had cashed checks at KS valued at $1,495,004.07 during the same time period.

After deliberation, the jury convicted defendant of both counts of willfully filing false tax returns in violation of 28 U.S.C. § 7206(1). Defendant subsequently filed a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 or, in the alternative, a new trial pursuant to Fed. R. Crim. P. 33.

On June 10, 2014, the District Court issued an order denying defendant's motion for judgment of acquittal,[1] but granting his motion for a new trial on the basis that the guilty verdict "constituted a manifest injustice." Spec. App. at 12. In a comprehensive opinion evaluating the totality of the evidence and reassessing the credibility of the witnesses, the District Court found that the testimony of Mazorra, the government's primary witness, was neither complete nor credible, while Olazabal's testimony was, by contrast, more credible.[2] The District Court concluded that

---

[1] In evaluating the motion for acquittal pursuant to Rule 29's more stringent standard, which precludes any substitution whatsoever by the court for the jury's determination of witness credibility, the District Court held that the evidence at trial supported the jury's finding of materiality, willfulness, and the defendant's guilt. Spec. App. at 9-11. The District Court's denial of defendant's Rule 29 motion for a judgment of acquittal is not presented for review on appeal.

[2] The District Court also expressed concern that two arguments in the government's summation were unsupported by the evidence and "caused the jury to stray from the facts": (1) the argument that Mazorra "could not have" accurately prepared Tupac's corporate tax returns even if he were aware of the check-cashing transactions because Olazabal didn't maintain records from KS, and (2) that Olazabal's probable motive was "greed." Spec. App. at 18-20; *see also* App. Vol. 2 at 373-374, 377. As the government noted, it is unclear whether the District Court considered these arguments to be an independent basis for granting a new trial. Since we affirm the District Court's order based on the totality of the evidence described below, we

3

defendant merely relied in good faith on his accountant's advice and therefore "d[id] not possess the unlawful intent required to find him guilty of tax fraud." Spec. App. at 18.

## DISCUSSION

We review an order granting a new trial for abuse of discretion. *United States v. Coté*, 544 F.3d 88, 101 (2d Cir. 2008). A district court abuses its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citations and quotation marks omitted). As we have previously noted in the context of Rule 33 motions, "[w]e are mindful that a judge has not abused [his] discretion simply because [h]e has made a different decision than we would have made in the first instance." *United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005) (quoting *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001)).

Rule 33 authorizes a court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). This rule confers "broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). In evaluating the merits of a motion for a new trial, a court is permitted to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Robinson*, 430 F.3d at 543 (quoting *Sanchez*, 969 F.2d at 1413). However, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414. Such exceptional circumstances exist where, for example, testimony is "patently incredible or defies physical realities," though even then the rejection of a witness' testimony "does not automatically entitle a defendant to a new trial." *Id.* Ultimately, a court may grant a new trial where a guilty verdict constitutes "manifest injustice." *Id.*

In its detailed opinion, the District Court explained that Mazorra's testimony was "both patently incredible and beside the point." Spec. App. at 14. As to the former, the District Court found it incredible that Mazorra would have remembered clearly a 30 minutes-long conversation with Olazabal, one of thousands of clients, without supporting documentation. The Court also viewed with skepticism Mazorra's testimony that Olazabal never informed MBS of his cash receipts, since Olazabal acted with a "total lack of evasion . . . when he cashed checks at KS," suggesting that he did not intentionally attempt to conceal this income for tax purposes either. *Id.* at 17.

The District Court found Mazorra's testimony to be "beside the point" because MBS "ignored the commercial reality of small contracting businesses" and failed to ask the proper questions: "not 'if' there is any off the books cash, but rather, 'where' is the off the books cash." *Id.*

---

need not assess whether these allegedly inflammatory statements could or did create independent grounds for affirmance.

at 15.  In light of the obvious disproportionality between Tupac's gross receipts and its reported officer compensation, the District Court concluded that MBS must have been a "tax preparation mill" that remained willfully ignorant of Tupac's cash transactions to avoid devoting time and resources to preparing accurate returns.  *Id.* at 16-17.  Indeed, this failure to probe the existence of unreported cash transactions was particularly puzzling given Mazorra's professional background as the former owner of a check-cashing business.  App. Vol. 1 at 149.  Further, because the government chose not to call MBS employee Lorena LeTellier, who interacted more regularly and directly with Olazabal, these weaknesses in Mazorra's testimony remained unmitigated.

Upon consideration of this problematic evidence and review of the record as a whole, we conclude that the District Court did not abuse its discretion in granting Olazabal's Rule 33 motion.  Though the government complains that the District Court "improperly supplant[ed] the jury's view of the evidence and the credibility of witnesses with its own," Appellant's Br. at 30, the District Court was fully entitled to independently assess both the credibility of witnesses and other evidence in deciding the Rule 33 motion.  *See Robinson*, 430 F.3d at 543.  The District Court's resultant decision to grant defendant a new trial, supported by a thorough explanation in the June 10, 2014 order, fell within its "broad discretion" under Rule 33, and accordingly we will not disturb that order here.  *Sanchez*, 969 F.2d at 1413.

## CONCLUSION

For the foregoing reasons, the order of the District Court granting a new trial is **AFFIRMED**, and the case is **REMANDED** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk