15-1657-cr
*United States v. Memoli*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand and sixteen.

Present:
JOHN M. WALKER, JR.,
GUIDO CALABRESI,
PETER W. HALL,
    *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

                        *Appellee*,

        v.                                                          No. 15-1657-cr

EDWARD MEMOLI,

                        *Defendant-Appellant*.

_____

For Defendant-Appellant:     EUGENE J. RICCIO, Law Offices of Gulash and Riccio, Bridgeport, Connecticut

For Appellee:     HAROLD H. CHEN, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, Bridgeport, Connecticut

Appeal from a final judgment of the United States District Court for the District of Connecticut (Bryant, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Edward Memoli stands convicted of conspiracy to obstruct interstate commerce by extortion, in violation of 18 U.S.C. § 1951(a), and for aiding and abetting the obstruction of interstate commerce by extortion, in violation of 18 U.S.C. §§ 1951(a) and 2. On appeal, Memoli argues that the district court abused its discretion when it admitted his pre-arrest statement to an FBI agent that "those days were behind him." We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

"We review evidentiary rulings for abuse of discretion." *United States v. Mercado,* 573 F.3d 138, 141 (2d Cir. 2009). Federal Rule of Evidence 404(b) prohibits admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed R. Evid. 404(b)(1). Admission of this evidence is allowed, however, if it is "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed R. Evid. 404(b)(2). "This Circuit has adopted an inclusionary approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (internal quotation marks omitted). In assessing a district court's determination of admissibility under Rule 404(b), this Court "considers whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative

value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *Id.*

With respect to the first prong, Memoli's statement that "those days were behind him" was not offered as evidence of Memoli's prior criminal acts or propensity for criminal activity but to rebut Memoli's contention that he did not threaten Labella and believed he was merely assisting Casolo in collecting a legitimate debt. Although Memoli conclusorily asserts that the statement was offered "to impermissibly draw to the jury's attention that [he] had a criminal background and thus a tendency to violate the law," Appellant's Br. 16, he does not point to any record evidence suggesting that the Government used the statement to show criminal propensity. Indeed, in its closing argument, the Government brought up that statement only in advancing its theory that Memoli was aware that Casolo's offer involved something more serious than requesting the payment of a debt. In other words, to the extent that Memoli claimed ignorance of the extortion plan or mistook it as a routine debt collection, the statement permitted the jury to infer otherwise. The evidence was, therefore, offered for a purpose "other than to demonstrate criminal propensity." *Scott*, 677 F.3d at 79; *see United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) ("Where a defendant's intent or knowledge is clearly at issue, evidence of prior acts may be admissible to prove intent or knowledge."); *see* Fed. R. Evid. 404(b)(2) (prior crime evidence admissible when offered to prove "intent," "knowledge," or "absence of mistake").

With respect to prong two, Memoli's statement was relevant to a material issue in dispute: whether he had conspired with, or aided and abetted, Casolo to commit extortion, which is defined as "obtaining property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). In his summation, Memoli's counsel described the dispute over whether Memoli had threatened Labella as "the key

3

issue in this case," App. 1026, and argued that Memoli had simply asked Labella to pay the debt, and had not made any threats. A jury could infer from Memoli's statement that he was hesitant to agree to Casolo's offer because it involved threatening Labella. The statement was therefore relevant because it had some "tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Prong three "is essentially an importation of Rule 403's balancing test." *Scott*, 677 F.3d at 83. Memoli contends that the vague statement that "those days were behind him" was of little evidentiary value because it was devoid of detail. But this argument cuts both ways: the vagueness of the statement also reduced the risk of unfair prejudice. If the jury could infer that "those days were behind him" meant that Memoli had previously been involved in extortion, the danger of unfair prejudice was negated by the fact that the statement represented a limited portion of the overall testimony and did not involve more serious conduct than that alleged in the indictment. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (no unfair prejudice under Rule 403 when evidence of prior acts "represented only a tiny fraction of the testimony heard by the jury, and did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").

With respect to prong four, the court made it abundantly clear in its limiting instruction to the jury that it could only consider Memoli's statement for the limited purpose of determining whether he knowingly and intentionally committed extortion. The district court's careful limiting instructions in the final jury charge were sufficient to ensure against any unfair prejudice. *See United States v. Downing,* 297 F.3d 52, 59 (2d Cir. 2002) (noting that Rule 404(b) prejudice "can be cured with proper instructions, and juries are presumed to follow their instructions" (internal quotation marks omitted)); *see also United States v. Elfgeeh*, 515 F.3d

4

100, 127 (2d Cir. 2008) ("Where an inadmissible statement is followed by a curative instruction, the court must assume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant." (internal quotation mark omitted)). We therefore identify no abuse of discretion by the district court in admitting Memoli's statement.

Even if the district court abused its discretion, however, any error was harmless. We review the erroneous admission of evidence for harmlessness. *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009). "A district court's erroneous admission of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Al-Moayad*, 545 F.3d 139, 164 (2d Cir. 2008) (internal quotation mark omitted). In making that determination, "we consider '(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence.'" *Scott*, 677 F.3d at 85 (quoting *United States v. Kaplan*, 490 F.3d 110, 123 (2d Cir. 2007)).

We have observed that "[t]he strength of the prosecution's case . . . is probably the single most critical factor." *United States v. Lombardozzi*, 491 F.3d 61, 76 (2d Cir. 2007) (internal quotation mark omitted). Here, the Government's case was strong. Labella, the principal victim, provided detailed testimony that he had paid money to Casolo after receiving threatening phone calls and voicemails from a person claiming to be "Lorenzo," who suggested that Labella's family would be harmed if he did not pay. Memoli later admitted that he had called Labella using the alias "Lorenzo." The other victim, Desabella, also testified that he had received

5

threatening phone calls from "Lorenzo," who demanded that he pay money to Casolo, and told Desabella that he "did not want to get [his] family involved with this." App. 295.

Additional evidence corroborated this testimony. Sgt. Keenan testified that, when he and his fellow officers met with Labella at the FBI, Labella was distraught over Lorenzo's threats and was more afraid of Lorenzo than of the FBI. Indeed, when Sgt. Keenan played a recording of Memoli's voice to Labella, Labella's "whole demeanor changed. He began to shake. His eyes watered up . . . It was extremely difficult for him to hear the voice" of the man he had known as "Lorenzo." App. 170. Bernini, Casolo's long-time partner and the mother of his children, testified that she overheard a telephone conversation in which Casolo told Memoli to make phone calls claiming to be a man named "Lorenzo" collecting on a gambling debt for the mob. The Government also introduced telephone toll data and Western Union money transfers, which showed that Memoli's threatening phone calls were often followed by Western Union money transfers between Casolo and Memoli. And, even when excluding Memoli's statement that "those days were behind him," the jury could infer from his other statements that he intended to threaten Labella.

The remaining factors also weigh in favor of concluding that admitting the statement was harmless error: the Government did not act improperly, and, though relevant, the importance of Memoli's statement was lessened by the evidence outlined above, including the other, largely cumulative, statements that he made to Agent Bokal.

Although Memoli argues that the error was harmful because the Government's case "relied heavily upon the testimony of three compromised witnesses, all of whom admitted to engaging in various forms of unprosecuted criminal activity," Appellant's Br. 22, the assessment

6

of witness credibility "lies solely within the province of the jury," *United States v. Josephberg*, 562 F.3d 478, 487 (2d Cir. 2009).

We have considered Memoli's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, CLERK